[Filed November 22, 1888.]

# JOSEPH LIGGETT ET AL., APPELLANTS, *v.* W. S. LADD ET AL., RESPONDENTS.

UNINCORPORATED ASSOCIATION — RIGHT OF ONE TO SUE FOR ALL. — One or more of the members of an unincorporated association may sue for the benefit of the whole, to enforce a right in favor of the association which is cognizable in equity, where the members comprising it are so numerous that it would be impracticable to bring them all before the court.

RELIGIOUS DOCTRINE — RIGHT TO TEACH INCLUDES RIGHT TO ACQUIRE PROPERTY. — The right to believe and teach religious doctrines includes the right to organize churches, establish seminaries of learning, and acquire property for that purpose, and to claim the protection of the civil law in the enjoyment of such right.

TRUSTEE — MAY HOLD PROPERTY FOR VOLUNTARY ASSOCIATION — CORPORATION AS TRUSTEE. — Mere voluntary associations are incapable of taking and holding real property in their society name; but it may be held for their use and benefit through the intervention of a trustee, who may be a natural or artificial person. When, therefore, an incorporated religious association procured through other parties the formation of a corporation for literary purposes, the charter of which contained a provision that its object was to acquire and hold property in trust for such association, and that its trustees should be appointed by the representatives of the latter: *held,* that property subsequently conveyed to it, unless the deed of conveyance limited it to a different use, must be deemed to have been taken in trust for the association; and where the legislature in providing for a college, the leading object of which should be to teach such branches of learning as are related to agriculture and the mechanic arts, in compliance with the provisions of the act of Congress granting public lands to the several states and territories which might provide colleges for that purpose, passed July 2, 1862, designated and adopted the said corporation as the Agricultural College of the state, in which all students should be instructed in accordance with the requirements of said act of Congress, and the corporation accepted such designation and adoption, in pursuance of a requirement of the legislature: *held,* that the relations of the corporation to the religious association were not thereby changed; that the state, in consequence of such act and acceptance, was not authorized to alter the charter of the corporation, or interfere with the right of the association to manage property conveyed to the former, as provided in the charter; nor that the designation of the corporation as such college created a new entity, or changed its character as trustee of the property held by it for the benefit of the association. *Held, further,* that a deed to land subsequently executed to the corporation, which contained a provision to the effect that the premises be used by it for the purposes of the Agricul-

tural College of the state, and that when they should cease to be so used, they should vest and become the property of the persons who had or should contribute the purchase-money, did not impress a trust upon the premises in favor of such college; that the latter, as distinct from the corporation, was only ideal; that said provision in the deed referred to created a conditional limitation in favor of the persons who contributed the purchase-money, and that the trustees of the corporation could not rightfully convey the land contrary to the will of the association.

Appeal from the Circuit Court for the county of Benton.

*George H. Williams* and *J. K. Kelly*, for Appellants.

*James F. Watson* and *John Burnette*, for Respondents.

Thayer, C. J.— The appellants as plaintiffs brought suit against W. S. Ladd and others, regents of the State Agricultural College of the state of Oregon, under the act of February 11, 1885, and the Corvallis College, alleging in their complaint the following facts: That they were members in good standing of the Methodist Episcopal Church South, of the state of Oregon, and brought the suit for themselves, as members of said church, and for other members thereof, in the state; that said church was an unincorporated religious association, embracing in its membership a large number of persons in various parts of the state, with societies, churches, and ministers devoted to the support and spread of the Christian religion; that the Corvallis College was an educational institution located at Corvallis, Oregon, and duly incorporated under the laws of the state, and the other defendants were persons claiming to be and assuming to act as the board of regents of the State Agricultural College of the state of Oregon; that said Corvallis College was duly incorporated under the laws of the state on the twenty-second day of August, 1868, by certain persons or trustees; that by the second article of the articles of incorporation of said college, it is provided as follows: "The object of

s incorporation is to acquire and hold property in trust for the Methodist Episcopal Church South in the state of Oregon, and to endow, build up, and maintain an institution for educational purposes, and to confer all such honors, distinctions, and degrees as are usual in colleges to be conducted and carried on under the direction and control of the trustees aforesaid, and their successors in office; *provided,* that said college shall be strictly a literary institution." Article 6 thereof provides as follows: " The trustees as aforesaid were appointed by the Columbia Conference of the Methodist Episcopal Church South at their last annual meeting, and their successors will be appointed at the next annual meeting of said conference, and so on in perpetual succession, according to the laws, customs, and usages of said church"; that on the third day of January, 1876, the trustees of said Corvallis College duly appointed by said conference made and filed supplementary articles of incorporation, adding to said second section the following: "And with full power and authority to make, execute, and deliver checks, promissory notes, and bills of exchange for the purpose of paying the debts of said institution and purchasing property necessary for the same; and to make, execute, and deliver deeds and mortgages of all or any of the property of said institution, when the same shall be sold or mortgaged; and to sell any and all property belonging to said college when the same shall be deemed unsuitable; and to purchase and hold other property of any name and nature necessary and suitable to the complete success and purpose of said institution not exceeding the sum of five hundred thousand dollars"; that on the twenty-first day of December, 1870, the legislative assembly passed an act designating and permanently adopting said Corvallis College as the Agricultural College of the state, with a provision in the act that the college should accept the same

and be bound thereby; that on the twenty-ninth day of October, 1870, said Corvallis College duly accepted the act, and has since kept and observed all its provisions; that since said college was so made the Agricultural College of the state, it has been receiving students, and educating and fitting them for agricultural pursuits according to the laws, regulations, and usages applicable to an agricultural college, and large contributions of property and money have been made by the members of said church, and others, for its support as the. Agricultural College of the state; that on the eleventh day of April, 1871, George Roberts and wife, for the consideration of four thousand five hundred dollars to them paid, sold and conveyed, by deed duly executed, to said Corvallis College certain real property consisting of 34.85 acres of land, situated in said county of Benton; said deed contains the following provisions: "And this conveyance is made to said Corvallis College to the end that the premises be used by said college as an agricultural farm in connection and for the purpose of the Agricultural College of the state of Oregon. Now, whenever said premises shall cease to be used or occupied for the purposes of said Agricultural College, then the said premises shall vest and become the property of the several persons who have or shall contribute the purchase-money, in the proportions contributed by each person." That said purchase price of said property consisted of moneys contributed for the purchase of it as aforesaid, by members of said church, and others; that at the annual session of the said Columbia conference, held in Albany on the tenth day of September, 1885, Robert L. Buchanan and eighteen others were duly appointed by said conference as trustees of said college, as provided in said articles of incorporation; that said persons were and continued to be the lawfully appointed and acting trustees of said college until the fifteenth day of September, 1886;

that said conference, at the same session, duly adopted a resolution, declaring, in effect, that no change should be made by the trustees of said college affecting its rights or standing as the Agricultural College of the state of Oregon, which conference was and all times has been the duly authorized representative of said church, according to its regulations and usages; that on the fifth day of February, 1886, a majority of the said trustees, with a full knowledge of the said action of said conference, passed the following resolution, to wit: "That the president and secretary of this board be ordered to deed the college farm — referring to the land conveyed to the college by Roberts and wife — to the state of Oregon or its constituted authorities; that on the twentieth day of February, 1886, the acting president and secretary of the college, in its name, and in pursuance of said resolution, executed such deed to such regents as aforesaid, without any consideration therefor, or consideration or benefit to said college, and with full knowledge by such regents of the trust set forth in the complaint.

It was alleged in the complaint that said regents, at the time said deed was so executed to them, were not and never have been a lawful or corporate body, or had had capacity to take or hold the property described in the deed; that the Corvallis College received and held the property in trust for the appellants and the other members of the said church; and that the said resolution and the said deed were in violation of said trust, and contrary to the known and expressed will of said church, and, if held valid, will work irreparable injury to said college as the Agricultural College of the state, and will weaken the influence and power of said church for educational and religious purposes; that the persons named as defendants in the complaint belonged to the board of regents as constituted under said act of 1885; that they denied the alleged

trust, and that said deed of the twentieth day of February, 1886, was a cloud upon and an injury to the rights of the appellants and the other members of the said church; and that said Corvallis College was unwilling to execute the trust alleged in the complaint without a judicial determination that the said deed had no force or effect.

The relief demanded in the complaint was, that the said deed last referred to be set aside. To this complaint the respondents, Ladd and others, interposed a demurrer, upon several grounds, among which were, that the appellants had no right to bring the suit, and that the Methodist Episcopal Church South had no interest in the subject-matter of the suit. The circuit court sustained the demurrer on both of these grounds, and from the decree entered thereon this appeal was taken.

Whether the appellants had a right to bring the suit depends upon the question of their having an interest in the subject-matter of it, cognizable in equity. They could maintain such an interest in no other way than by a suit in the form of the one brought. The right which the appellants claimed had been violated belonged to them as members of a particular association, but as the association was not incorporated, it could not sue, and the various members comprising it were evidently so numerous that it would have been impracticable to bring them all before the court in one suit. The law, in such cases, permits one or more to sue or defend for the benefit of the whole. (Code, sec. 385.)

It is unnecessary, therefore, to consider any other question in the case than the one appertaining to the rights of the appellants as members of the said religious association. The right of mankind to believe and teach such doctrines regarding religion as meet the approval of their consciences is recognized under our form of government as inherent; it is freely accorded to every sect

and denomination in the land, and is so interwoven with the principles which underlie our political fabric that it cannot be taken away without the general consent or a violent revolution.   The law not only tolerates the privilege, but protects every one in the enjoyment of it.   The people are entitled, as an incident of such right, to form associations, adopt creeds, organize churches, and establish seminaries of learning for the advancement of their peculiar tenets of faith, and to acquire property and erect buildings to aid them in accomplishing that end.

Mere voluntary associations, however, cannot take the title to real property in their society name, as they are not in law regarded persons, but it may be held for their use and benefit by trustees, and their right to the enjoyment of the property be secured in that way.   Such trustees, as I view it, may be artificial persons as well as natural ones.   If this is correct, then, while the Methodist Episcopal Church South could not, in consequence of its being unincorporated, take the legal title to real property, yet it could secure the benefit of the property by having the legal title to it conveyed to a corporation for its use.

Such is the course which seems to have been pursued by the church in the establishment of a literary institution at Corvallis.   It caused the formation of a corporation known as the " Corvallis College," and a provision to be inserted in its charter that the object of the incorporation was to acquire and hold property in trust for the Methodist Episcopal Church South in the state of Oregon.   It also, in order to secure a faithful execution of the trust, caused a further provision to be inserted therein to the effect that the trustees of the college should be appointed by its conference.

By the incorporation of the college, it became a distinct legal entity; yet it was the mere offspring of the church, — an instrument employed by the latter " to endow, build

up, and maintain an institution for educational purposes."
It received its life and inspiration from the church, and
was one of the agencies which the latter made use of to
perform its mission. The college had no will of its own;
it had no power to act independently of the church; it
was capable of taking and holding the title to real prop-
erty only in trust for the church. It cannot be consist-
ently contended that the college, prior to the execution of
the Roberts deed, owned any property except in the man-
ner indicated; and, unless it can be maintained that it
acquired and held the property described in that deed in
a different capacity from that in which it held the other
property, we must conclude that it held that in the same
manner as the other, in trust for the said church.

Counsel for the respondents have attempted to show
that the college held the Roberts property independently
of the church. They claim that an express trust was im-
pressed upon the property by the said deed; that it was
devoted by that instrument to the use and purpose of the
Agricultural College of the state of Oregon, and that the
church could not divert it to a different purpose or exer-
cise control over it in any manner.

It will be observed that, prior to the time of the execu-
tion of the deed to the property, the legislative assembly
passed the act designating and permanently adopting the
Corvallis College as the Agricultural College of the state,
subject to its acceptance of the provisions of the act, and
that it had duly accepted them.

The question then arises as to the extent of power and
control which the state acquired over the college by that
act and its acceptance, and what authority of the church
over it was thereby relinquished. Making the Corvallis
College the Agricultural College of the state was not an
arbitrary act of sovereignty on the part of the state. The
legislature had no power to compel the Corvallis College

to become such Agricultural College without its consent. It became such by mutual agreement between the two parties, who were capable of entering into a contract, and it included a subject-matter in regard to which they could lawfully contract. Whether said church consented to the arrangement between the state and the Corvallis College is not directly alleged in the complaint. I think, however, it would be inferred therefrom that it did so, as it is alleged therein that, since said college was made the Agricultural College of the state, large contributions of property and money by members of the Methodist Episcopal Church South, and other persons, have been made to the support of it as such Agricultural College; and the acceptance of the act, which must have been given by the trustees appointed by said conference, would authorize such inference in the absence of proof to the contrary. Now, if the power of the state over the college arises out of contract, the extent of the power must necessarily be determined by the terms of the contract.

Viewed in this light, I do not see how the state acquired any interest in or control over the property in question through the arrangement between it and the college, as set out in the complaint; or how the said church could have been deprived of any of its rights in the property held in the name of the college in consequence thereof. There is no stipulation shown or intimated entitling the state to control the property conveyed to the college, nor that it should not be held in trust for the church, as provided in the charter of the college.

The claim of the respondent's counsel that the title to the property was taken in the name of the Corvallis College for the uses and purposes of the State Agricultural College cannot be maintained. It was deeded to the Corvallis College in consideration of four thousand five hundred dollars, and the only clause in the deed which limits

XVII. OR.—7

the use of the property is the following: "And this conveyance is made to the Corvallis College to the end that the premises be used _by said college_ as an agricultural farm in connection and for the purpose of the Agricultural College of the state of Oregon. Now, whenever said premises shall cease to be used or occupied for the purposes of said Agricultural College, then the said premises shall vest and become the property of the several persons who have or shall contribute the purchase-money, in the proportions contributed by each person."

This clause created a conditional limitation. The college, at the time the deed was executed, had been designated, as has already been mentioned, the "Agricultural College of the state"; and it is very apparent from the circumstances of the transaction that the founders and patrons of the college, who doubtless were instrumental in procuring for it the distinction referred to, bought the said lands from Roberts, and had the said deed, with the condition therein contained, executed for the benefit of the Corvallis College, and for their own benefit. The condition is in favor of those who contributed the purchase-money; no other person can take advantage of it; and the premises were given to the Corvallis College, subject to the condition to enable it to carry out its compact with the state. It was the latter institution which was to use the premises; it had agreed with the state, in effect, that it would add another branch to its course of instruction, and that its leading object should be "to teach such branches of learning as are related to agriculture and the mechanic arts," and it needed the premises for an agricultural farm.

The deed itself created no trust that I can discover; it did not vest the title to the land in the college, to hold for the use of any other institution or person, although it required the grantee to use it for the purposes mentioned. How a

trust could have arisen in favor of the Agricultural College of the state, when there was no such institution, at least, that was distinct from the Corvallis College, is beyond my power of compehension. Counsel for the respondent seem to think that there is a distinct entity known as the "Agricultural College of the state," and that it is essential that there should be such an institution, in order to enable the state to realize the benefit of the provisions of the act of Congress donating public lands to the several states and territories which may provide colleges for the benefit of agriculture and the mechanic arts, passed July 2, 1862. A state is not entitled to the benefit of that act except "for the endowment, support, and maintenance of at least one college, where the leading object shall be — without excluding the scientific and classical studies, and including military tactics — to teach such branches of learning as are related to agriculture and the mechanic arts, in such manner as the legislature may prescribe, in order to promote the liberal and practical education of the industrial classes in the several pursuits and professions of life."

But I do not see that it is necessary for the state to found a college in order to secure such benefit. It appears to me that it would be sufficient, to entitle the state to the benefit of the act, to endow, support, and maintain, so far as the income of the fund will permit, an existing college to carry out the object indicated, and that it would matter not whether it was called the Agricultural College of the state or was known by some other name. The Agricultural College fund is undoubtedly a trust fund in the hands of the state, and if the state were to endow a college out of it, in compliance with the provisions of said act of Congress, it would unquestionably be entitled to exercise visitorial powers over the college; but it would have no authority to interfere with the charter of the institution.

The legislature cannot alter the charter of any private corporation.

The old case of *Dartmouth College* v. *Woodward,* 4 Wheat. 518, settled that question; besides, private corporations, by our constitution, can only be formed under general laws. If the theory of the respondent's counsel is correct, that Roberts and wife conveyed the said land in trust for some one, I am unable to discover who the *cestui que trust* could have been; nor do I think that any trust, as claimed, is indicated in the deed of conveyances.

As I view the matter, there was no such institution as the Agricultural College, except in name. The appellants allege in the complaint that the Corvallis College became the Agricultural College of the state; they probably thought so from the fact that the legislative assembly, by an act approved October 21, 1870, so declared; but it does not appear that any such institution was ever organized, and the legislative assembly has no power by its fiat to transform one corporate institution of that character into another. It cannot create a corporation by direct enactment, except for municipal purposes (Const., art. 2, sec. 2), although it may provide, by a general law, for organization of such a corporation. I apprehend that it will be discovered, upon close inspection, that the "Agricultural College of the state of Oregon" has only an ideal existence. When the Corvallis College was organized into a corporation, the name it assumed, and by which it was to be known, was specified in its articles of incorporation; and the legislature had no power to change it, or to merge the corporation into another organization, either real or imaginary.

This view did not affect the relations between the Corvallis College and the state, nor question the former being such a college as is required by said act of Congress; it merely regards its legal *status.*

The Corvallis College is an agricultural college; its lead-ing object is to teach that branch of learning which relates to " agriculture and the mechanic arts"; and to distinguish the character of its work from that of other institutions of learning, it may properly be termed the Agricultural Col-lege of the state; but that is only its conventional name; its legal name is the one it received at its conception and birth.    I cannot see that the declaration of the legislative assembly declaring the Corvallis College the Agricultural College of the state changed the relations existing between the former and the Methodist Episcopal Church South. If the legislature had intended that the property thereafter acquired by the college should be held in trust for the state, and to inaugurate a new *regime* in the management and control of the college, and in the appointment of its trustees, it should have required it, as a condition of the arrangement entered into between it and the state to teach agriculture and the mechanic arts, in compliance with said act of Congress, to so modify its charter as to declare such trust and give the state the authority to ap-point such trustees.    Instead of pursuing that course, it left the whole matter *in statu quo*.    Unless, therefore, the deed from Roberts and wife declared a distinct trust, the one specified in the charter must prevail, and the right on the part of the said conference to appoint the trustees continues.

I am aware that the church has no tangible or real in-terest in the land; that it cannot divert it from the use specified in the deed, or derive any direct pecuniary ben-efit from it whatever; nor that its right to appoint trustees to manage and control it is of any immediate advantage; but it is, nevertheless, entitled to exercise such right, and the legislature has no power to deprive it of its authority in that particular.    It belongs to that character of rights which courts of equity are required to defend against

arbitrary encroachments. The trustees of the college had no authority under its charter to convey away the land. Their power over the property of the corporation must be found in its charter, which, in that regard, is their paramount law, and is beyond the reach of any legislative enactment. It is their rule of action so long as it stands, and there is no power to alter it, except that which inherently exists in the corporation itself and its beneficiaries. Nothing but their voluntary act can change it, which could only be effected by filing supplementary articles, adopted by the trustees of the corporation, with the consent of the church for whose benefit and advancement it was originated.

In arriving at this conclusion, I am not consoled by the reflection that the view expressed will promote the best interests of the public. I think it would be far better for the community if the Corvallis College, in its present condition of affairs, were under the exclusive control of the state. But if this court were to hold, under the facts of the case, that the interest of the Methodist Episcopal Church South in that institution, and authority over it, as provided by its charter, were cut off by the legislation referred to, or that the said deed from Roberts and wife created a trust in favor of any other party than the said church, it would, I am constrained to believe, overturn well-settled principles of law, and tend to establish a pernicious and dangerous precedent. If counsel for the respondents are able to show that the conclusions arrived at are erroneous, we trust they will do so in a petition for a rehearing, and we will gladly correct them. According to the view herein expressed, the decree appealed from must be reversed, and the case remanded to the circuit court, with directions to overrule the said demurrer, and for such further proceedings as that court may deem proper.

AFTER REHEARING.

LORD, J.—The main controvery arises out of the construction to be given to that portion of the articles of incorporation as are set out in the complaint.  The articles are not set out in full, and as the demurrer confines us only to so much of them as are stated in the complaint, our inquiries must be thereby limited.  It is not possible, then, for us to say what effect the articles of incorporation might have, considered as a whole, in determining the question here involved.  It may be possible that the omitted articles, considered in connection with those stated, might throw much light upon the objects and purposes of the incorporation, and indicate that they were intended and that the articles in fact do authorize the college to take and hold property as a source of revenue and income to maintain and endow it as a literary institution for educational purposes.  By the second article of the articles of incorporation, as set out in the complaint, it is provided as follows:—

"The object of this incorporation is to acquire and hold property in trust for the Methodist Episcopal Church South in the state of Oregon, and to endow, build up, and maintain an institution for educational purposes, and to confer all such honors, distinctions, and degrees as are usual in colleges, to be conducted and carried on under the direction and control of the trustees as aforesaid, and their successors in office, provided that said college shall be a strictly literary institution."

When incorporated, that the college became a legal entity, and endued with the capacity to hold property in trust for the church, is not disputed; but the inquiry and point of contention is, whether by the articles referred to it could hold property for itself, as distinct from the church, to endow, build up, and maintain the college for educational purposes as a literary institution.

The claim of the plaintiff is, that all property of whatsoever kind, and however acquired, of which the college is capable of taking, is held in trust for the church, to be applied to the purpose specified, if there be any, under the direction of trustees appointed by it.

In this view, the land donated, although for agricultural purposes, when the title was taken by the college, was held in trust for the church and subject to their direction and control through the trustees, of their appointment for the purposes specified.

But is this the proper construction to be given to the article cited? It not only provides for holding property in trust for the church, but also provides for endowing and building up the college for educational purposes. To "endow" means to make provisions for the support of a corporation or institution by appropriating lands or funds as a source of regular and reliable income. By the word "endow," as used in that article, it would seem to have been intended to endue the college with all the functions and capacities which such word imparts, and that is, usually, to take and receive property or funds in all the various forms in which it may be donated for educational purposes.

In this view, the college was incorporated as much for the specific object of maintaining an institution of learning which should be strictly literary and capable of conferring the usual degrees of honor and distinctions as it was to furnish an entity to hold property in trust for the unincorporated church association.

How could the college be built up and maintained for educational purposes as specified in the article, unless it could take property and funds which it could appropriate through its trustees for that purpose? We all know, as a matter of common knowledge, that institutions of this and like character are usually endowed with the capacity

to take property and do business within the scope of the direct purposes of such institutions, and that they are built up and maintained by tuition fees, and gifts and donations from the living and dying to foster and extend the enlightened projects for which they are organized.

It may be that a mere literal reading of the article would indicate that the corporation was "to hold property in trust for the church and to endow an institution" (the college); that is, that the corporation or college was to endow itself. But this could not be; for it is a thing to be endowed. The word "endow," said the lord chancellor in *Edwards* v. *Hall*, 6˙ DeGif. & G. 33, "means giving a benefit to some existing thing. It supposes something to exist either at the time the gift is made or when the endowment is to take place." It will hardly do to suppose that the word was used or intended as used to defeat the sense which its proper meaning imparts, and especially as applied and ordinarily used in connection with such institutions. Yet to such uses must it come to give the article that construction,—a construction inconsistent with the proper signification of the word, and so manifestly impossible in the result reached that the absurdity would seem to render it unworthy of serious consideration. Nor does it give any color to the construction as contended for by the plaintiffs only as it tends to make the corporation do the impossible, and thereby defeat the power of the college in its own right to take and receive gifts and benefits for the purpose of education.

Their contention is, as the corporation could not endow itself, it has no capacity to take property by way of endowment or otherwise, according to this article, and therefore it could only take property in trust for the church. But can this construction be maintained? Is not the construction equally as reasonable and in conformity with an intent that makes the object of the in-

corporation twofold, viz.: 1. To hold property in trust for the church; and 2. To take property for itself for educational purposes? Can it have been intended that Corvallis College was not capable of taking a gift, or bequest, or legacy, or property, or funds to itself and in its own right to be used as a source of income or revenue "to endow, build up, and maintain an institution for educational purposes"?

How were these objects so distinctly specified to be effected without sources of revenue, derived in the various ways that institutions of this kind are made the recipient of benefits? One of the purposes to be effected, it is admitted, was to endow, build up, and maintain the college for educational purposes; and unless it would do violence to the terms of the article, ought not that construction of it, if reasonable, to be adopted which would carry the power essential to effect that purpose, and thereby make the college capable of taking and holding property for the uses specified, and essential to its existence and prosperity? To do this, we must necessarily give to the article a construction which would include the twofold objects as already stated. In one case the church would have a direct and beneficial interest in the property held in trust for it, while in the other, the college would take the legal title and beneficial interest in the property, and devote it to the educational purposes for which it was organized as a literary institution. As to property of the first character, the trustee of the college could make no disposition of it without the direction and consent of the church. Its interest is direct and substantial, and of such a beneficial character as would entitle it to have a right to any remedy that would frustrate any disposition of it against its will; but as to property with which the college might be endowed, it has no such interest as authorizes it to interfere, direct, or control the management

of it, except as it might incidentally exert its influence through the individual character of the trustees appointed by it.

For the purposes of the present case, it is sufficient to say that, while the college was thus organized, and for the objects specified, the state proposed that if the college would become an agricultural college, — that is, if it would give and include those instructions in agriculture and mechanics contemplated by the act of Congress, — it would give or endow the college with the benefit of such funds.

The trustees accepted this proposition. And while no legal entity as an agricultural college *eo nomine* was created by the proposition and its acceptance, the college did enlarge the sphere of its instruction so as to include the studies of agriculture and mechanics. In effect, Corvallis College did become, so far as instructions in these branches were concerned, to all intents and purposes an agricultural college. It being the only legal entity, the right of the church to appoint trustees for it still remained.

While this state of facts existed, the deed of Roberts and wife to the land in question was made, and as therein stated, "to the end that the premises be used by said college as an agricultural farm in connection and for the purposes of the Agricultural College of the state of Oregon." To devote the land to the uses specified in the deed could only be done by conveying the legal title to Corvallis College; for there was no Agricultural College *eo nomine* as an entity to take it; and as Corvallis College had undertaken, in compliance with certain legislation, to give such instructions in agriculture as were taught in agricultural colleges, there was no other way than the mode adopted to carry into effect the purposes to which the land was to be devoted as specified in the deed. Hence, to give what was styled the Agricultural College

the use and benefit of the farm as proposed and intended necessarily required that Corvallis College should take the legal title to the property for the uses and purposes specified. The college held the legal title, but the real beneficiary was the Agricultural College, or that department of instruction specifically devoted to teaching agriculture; and so long as the land is devoted to the uses specified, who has a right to complain? Or what interest has the church in this property? Manifestly it was not intended that the church should be the beneficiary of the gift, or it would have been so specified in the deed; and as it is not, but distinctly stated "to be used as an agricultural farm in connection and for the purposes of the Agricultural College of the state of Oregon," there does not exist in the church any right or interest in this property. The trustees of the college, appointed by the church, may manage and control the property for the uses specified while the title remains in the college, but no longer; yet' this gives the church no interest in the property, or a right of suit in its own behalf. It seems to me that the church has just as much right to claim an interest in the fund appropriated by the state to the use of the college for agricultural purposes as it has to claim an interest in the land in dispute; and the fact that the college did for several years take that fund and apply it to the uses specified indicates that it is endued with the capacity to take property and funds and hold it for other purposes than in trust for the church.

If the view here suggested is fairly deducible from the article as stated, and more consonant with right reason and the true objects of the incorporation, it is conclusive of this case. It cannot be denied, however, but that the subject is susceptible of conflicting inferences, and, from some vagueness of expression, involved in doubt, and, what perhaps is more significant, there is a want of that

unanimity of opinion in respect to it which is desirable
when important rights are to be affected by decisive
action.   The construction so ably and learnedly pressed
upon our attention has once received the approval of this
court, and may yet turn out, when all matters can be
more fully considered, the better view than the one sug-
gested.   Either view doubtless may be susceptible of ad-
verse criticism; and in such case, where, from obscurity
of expression, doubt is evolved and diverse conclusions
are drawn, when important rights are at stake, it is the
part of duty to proceed with caution and deliberation
that injustice may be avoided and the right prevail.

It is always better and more satisfactory, if it can be
done, to determine matters in litigation upon their merits.
Under these circumstances, it seems to us the safer and
wiser course to pursue, especially when important facts
admitted by the demurrer will be denied and contested,
is, to remand the cause for further proceedings, when the
particular subjects now considered, taken in connection
with others to which it may stand related, may make the
true objects of the incorporation more clearly and satis-
factorily appear, and thus afford the court an opportunity
to determine the rights of the parties in accordance with
the justice of the law.