Submitted on brief June 30, affirmed July 21, 1914.

## LORNTSEN v. UNION FISHERMAN'S CO.

(143 Pac. 621.)

**Constitutional Law—Impairing Obligation of Contracts—Charter of Corporation.**

1. Where a corporation was organized while Article XI, Section 2 of the state Constitution, provided that corporations might be formed under general laws, but should not be created by special laws except for municipal purposes, and that all laws passed pursuant to this section might be altered, amended, or repealed, but not so as to impair or destroy any vested corporate rights, and Sections 6679, 6683, L. O. L., authorized the formation of corporations to engage in any lawful enterprise, business or pursuit or occupation, and provided that the articles of the corporation should specify the name assumed by the corporation and the duration of the corporation if limited, act of February 20, 1913 (Laws 1913, p. 106), forbidding the use of the term "co-operative" as the corporate or business name or trademark unless the person, firm, association or corporation has complied with Sections 6766–6783, L. O. L., relating to co-operative associations, so far as it affects a corporation already organized, and using the term "co-operative" as a part of its name, impairs the obligation of a contract in violation of United States Constitution, Article I, Section 10, and Article I, Section 21 of state Constitution.

**Corporations—Regulation—Police Power.**

2. Act of February 20, 1913 (Laws 1913, p. 106), forbidding the use of the term "co-operative" as a business name unless the user has complied with Sections 6766–6783, L. O. L., is not, as applied to a corporation previously organized and using such term as part of its name, within the police power of the state.

**Constitutional Law—"Police Power"—What Constitutes.**

3. "Police power" extends to legislation, having for its object the promotion of the health, comfort, safety and welfare of society, but the rights of property cannot be invaded under the guise of protection when such is evidently not the purpose of the regulation.

From Clatsop: James A. Eakin, Judge.

This is an action by H. M. Lorntsen against the Union Fisherman's Co-operative Packing Company, a corporation. From a judgment in favor of defendant, plaintiff appeals. The facts are stated in the opinion of the court. Submitted on briefs without argument, under the proviso of Supreme Court Rule 18: 56 Or. 622 (117 Pac. xi). Affirmed.

For appellant there was a brief by *Mr. J. T. Jeffries.*

For respondent there was a brief by *Mr. A. W. Norblad.*

In Banc. Mr. Justice Burnett delivered the opinion of the court.

There is no issue of fact in the case at hand. The answer discloses that the defendant was incorporated under the general laws of this state October 13, 1896, with perpetual duration, having its principal office at Astoria, Oregon, and for the purpose, among other things, of pickling and canning salmon on the Columbia River. It has upward of a quarter of a million dollars invested in the enterprise, and has built up an annual business of $750,000, extending all over the civilized world, all under the name of Union Fishermen's Co-operative Packing Company, as designated in its articles of incorporation. It has on hand upwards of $2,000 worth of supplies for use in the conduct of its business, all having its corporate name engraved or printed thereon, and it is generally alleged

that the word "co-operative" as part of its corporate name is of great value to the defendant in the business world, and among the persons, firms, and corporations with whom the defendant has been engaged in trade during its existence. All this is admitted by the plaintiff.

At the twenty-seventh regular session of the legislative assembly it passed the act of February 20, 1913 (Laws 1913, p. 106), entitled:

"An act to protect co-operative associations, by preventing the use of the word 'co-operative' by any person, firm, association, or corporation, as a part of its associate, corporate or business name, or as a trademark or designation, and providing a penalty for violation of the act."

The first section forbids the use of the term "co-operative" as the corporate or business name or trademark, unless the person, firm, association, or corporation employing that designation has complied with Sections 6766 to 6783, inclusive, of Lord's Oregon Laws, relating to co-operative associations and enacted in 1909. The second section authorizes a suit at the behest of any person, firm, association or corporation to enjoin the use of the word "co-operative" by one who has not complied with Sections 6766-6783, L. O. L.; and further requires the Attorney General or district attorney, at the request of the Secretary of State, to institute and prosecute to final determination all necessary and proper suits or actions to dissolve an offending corporation and wind up its affairs. Acting under this statute of 1913, the plaintiff, describing himself as a citizen and resident of Astoria, Clatsop County, Oregon, after declaring that the defendant is a corporation organized by, pursuant to, and under the laws of Oregon, and is engaged in the business of packing,

pickling, and freezing salmon, and wholesaling the same, alleges:

"That said defendant corporation has not complied with Sections 6766 to 6783, inclusive, Lord's Oregon Laws, the same regulating co-operative associations, and said defendant corporation is not doing nor actually conducting nor engaged in a co-operative business, but notwithstanding that said defendant has not complied with said laws above quoted, and is not engaged in actually conducting a co-operative business, the said defendant continues to use the word 'co-operative' as a part of its corporate and business name."

The answer admits all the complaint, and sets forth the new matter already recited. The averment that the defendant has not complied with the sections relating to co-operative associations states only a conclusion of law, and may be disregarded. Reduced to its lowest terms, the substance of the complaint is that the defendant is not engaged in a co-operative business, but uses the word "co-operative" as a part of its corporate name. The question involved is the validity of the statute mentioned.

1. At the time the defendant corporation was formed, Article XI, Section 2 of the state Constitution read thus:

"Corporations may be formed under general laws but shall not be created by special laws, except for municipal purposes. All laws passed pursuant to this section may be altered, amended, or repealed, but not so as to impair or destroy any vested corporate rights."

· At that time also it was statute law that "whenever three or more persons shall desire to incorporate themselves for the purpose of engaging in any lawful enterprise, business, pursuit or occupation, they may do so in the manner provided in this act: Section 6679,

L. O. L. It was required as set forth in the present Section 6683, being part of the same act, that:

"The articles of incorporation shall specify—(1) The name assumed by the corporation and by which it shall be known, and the duration of the corporation, if limited. * * * "

Under this statute the defendant was organized as a corporation, and has since then conducted its affairs using the corporate name there specified. The substance of the situation is that through this statute the state offered certain corporate privileges and immunities to those who accepted its terms, which offer was accepted in this instance by the filing of articles of incorporation and organization of the defendant.

From *Dartmouth College* v. *Woodward,* 4 Wheat. 518 (4 L. Ed. 629), down to the present time the principle has been maintained that such an offer and acceptance constitute a contract between the state and the corporation, the obligation of which cannot be impaired by any subsequent legislation. It is a compact which is within the protection of Article I, Section 10 of the national Constitution forbidding any state to pass any law impairing the obligation of contracts, and Article I, Section 21, of our state Constitution, containing the same prohibition. The identical question has been settled by the utterances of Mr. Chief Justice Thayer in *Liggett* v. *Ladd,* 17 Or. 89, 100 (21 Pac. 133, 137):

"The legislature cannot alter the charter of any private corporation. The old case of *Dartmouth College* v. *Woodward,* 4 Wheat. 518 [4 L. Ed. 629], settles that question. * * When the Corvallis College was organized into a corporation, the name it assumed, and by which it was to be known, was specified in its articles of incorporation; and the legislature had no

power to change it, or to merge the corporation into another organization, either real or imaginary.''

It is plain that in this respect the act, as applied to a corporation already in existence when it was passed, is unconstitutional, in that it violates the charter or contract with the state under which it exists. It had a vested right to the name which it chose and under which it was accepted as a corporation by the state. By the terms of the Constitution, as it then stood, a part of that contract was that, while the legislature could amend or repeal laws relating to the formation of corporations, it could not impair nor destroy any vested corporate rights. All the cases cited by the plaintiff on the subject of charter changes are those where unlimited power was reserved for that purpose, or the change was consented to by the corporation. No case is cited, and it is believed none can be produced, where a new charter was forced upon a private corporation or any other association against its will, or where such a corporation was compelled to make a new and different contract, without its consent.

The act does not, as its title professes, protect cooperative associations because the defendant's name in no way affects the property of such associations, or their autonomy, or business. The act in effect destroys the defendant's name, in which it has a species of property, ostensibly for the benefit of other artificial persons. If we are to consider the title, as we must in the construction of an act, it is in effect the taking of private property of this defendant for the benefit of other private concerns.

2, 3. It must be conceded that all rights of property are subject to the police power of the state. It has been settled that this power—

"extends to legislation having for its object the promotion of the health, comfort, safety, and the welfare of society. Under it the conduct of an individual in the use of property may be regulated so as to interfere to some extent with the freedom of the one and the enjoyment of the other. * * But under the exercise of the police power, the act must have reference to the comfort, safety, or welfare of society, and it must not conflict with the Constitution. The law will not allow the rights of property to be invaded under the guise of protection when it is manifest such is not the object and purpose of the regulation": 6 Words and Phrases, p. 5427.

"It is a judicial function to determine the proper subjects for police regulations and a legislative function to determine, primarily, the expediency of regulation and the character thereof subject to judicial supervision to the extent of determining, in cases as they arise, whether the boundaries of reason have been so clearly exceeded as to violate some constitutional prohibition, express or implied; the judgment of the legislature being controlling unless it appears beyond reasonable controversy that the interference is unreasonable": *State* v. *Redmon,* 134 Wis. 89 (114 N. W. 137, 126 Am. St. Rep. 1003, 15 Ann. Cas. 408, 19 L. R. A. (N. S.) 229).

It is also said by Mr. Justice Harlan, in *Mugler* v. *Kansas,* 123 U. S. 623, 661 (31 L. Ed. 205, 8 Sup. Ct. Rep. 273, 297):

"The courts are not bound by mere forms, nor are they to be misled by mere pretenses. They are at liberty—indeed, are under a solemn duty—to look at the substance of things, whenever they enter upon the inquiry whether the legislature has transcended the limits of its authority. If, therefore, a statute purporting to have been enacted to protect the public health, the public morals, or the public safety, has no real or substantial relation to those objects, or is a palpable invasion of rights secured by the fundamental

law, it is the duty of the courts to so adjudge, and thereby give effect to the Constitution.''

It is essential to its validity that the measure must have some bearing upon or adaptability for promotion of the health, comfort, safety or welfare of society, and must not violate any constitutional right. As we have seen, the act in question does impair the obligation of the contract embodied in the articles of incorporation under which the defendant was formed. Conceding that the enjoyment of its property, even that of its name, must be subject to the police power of the state, yet it is inconceivable that any of the purposes within the scope of that power would be subserved in the slightest degree by ruthlessly depriving the defendant of an important part of its title on the strength of which it has built up an honorable and extensive trade. Under a threat of dissolution the statute commands it to lay aside the name which gives it credit in business, both at home and in distant centers of trade, all without any reference to whether it is necessary or helpful to the public welfare. In our judgment it is an unreasonable exercise of the law-making function, besides being, as to this defendant, an avowed effort to take from it a valuable part of its assets for the benefit of other private associations. The decision of the Circuit Court was right; and it is affirmed.    AFFIRMED.