Argued September 15, affirmed October 24, rehearing denied December 15, 1914.

## PACIFIC TITLE & TRUST CO. v. SARGENT. OREGON REALTY & TRUST CO. v. SARGENT.

### (144 Pac. 452.)

**Banks and Banking—Trust Companies—Statutory Provisions.**

1. Laws of 1913, page 721, relating to trust companies, and providing in Section 6 for forfeiture to the state bank fund of $100 for each day during which a violation of the act continues after ten days' notice by the superintendent of banks, is penal in its nature, and must be strictly construed.

**Banks and Banking—"Trust Company"—Statutory Provisions.**

2. Under Laws of 1913, page 721, relating to trust companies, providing in Section 2 that any corporation incorporated under the laws for the incorporation and organization of banks and which is authorized to act as an executor, administrator, guardian, assignee, trustee, receiver, depository, or to discharge any duty, office or position of trust, and any corporation organized under Section 1 of this act shall be known as trust companies, a company organized prior to February 25, 1907, when the earliest law in the state specially providing for the organization and incorporation of banks was filed in the office of the Secretary of State, is not a trust company within the terms of this act.

**Banks and Banking—Constitutional Law—Trust Companies—Obligation of Contract.**

3. Laws of 1913, page 721, regulating trust companies, providing in Section 1 that the capital stock of each trust company shall be not less than $100,000, except that a company with not less than $50,000 may be incorporated in a city of less than 15,000 population, and providing in Section 5 that no person, firm or corporation which has not complied with the act shall use in the name under which its business is transacted the words "trust" or "trustee," is an unreasonable exercise of the police power and a violation of the contract of the state with a corporation which has used the word "trust" as a part of its name through a long course of years and which would be compelled to multiply its capital tenfold to comply with the law.

From Marion: William Galloway, Judge.

Department 1.    Statement by Mr. Justice Burnett.

The suit of the Pacific Title & Trust Company, a corporation, and the Oregon Realty & Trust Company,

a corporation, against S. G. Sargent, superintendent of banks of the State of Oregon, and A. M. Crawford, Attorney General, was consolidated by consent of the parties, the questions in each being practically the same. The Pacific Title & Trust Company is said in the complaint to be authorized and empowered by its articles of incorporation ''to make and certify abstracts of title to real property and furnish any information from the public records; to issue policies of insurance of title to real property; guaranteeing such title against defects or encumbrances; to buy, own, hold, lease, mortgage and sell, real and personal property, patent and patent rights; to build upon and improve real property; to buy, lease, rent, improve, care for and sell real property as agents; to collect rents, debts, demands, notes, bills, bonds and all other evidences of indebtedness and securities; to borrow or loan money on real or personal securities, and execute promissory notes and mortgages; to receive money on deposit or in trust, either with or without paying interest on the same, and to issue certificates of deposit for the same and to hold the same subject to the check of the depositors; to issue bonds or obligations of this corporation when money or securities for money are borrowed or received on deposit; to buy, discount, own, hold, hypothecate and sell notes, mortgages, stocks, bonds and securities of every kind and character; to act as agent for fire insurance companies and solicit and place fire insurance; to issue indemnity bonds and undertakings of any and all kinds to any person, firm or corporation; to act as surety on all bonds or undertakings required by law or the rule of any court; to take, own, hold and dispose of any property real or personal in trust, and execute any such trust; to act as executor, administrator, agent, trustee, assignee,

factor, broker or receiver, and generally to do and perform any act necessary to carry out the objects of this corporation, and to demand, receive and collect fees and charges for all acts and services done and performed.'' The corporate powers of the defendant Oregon Realty & Trust Company include many similar prerogatives, but its principal business seems to be the owning, operating, and disposing of real estate of different kinds. The allegations of the two complaints are in substance that, acting under the pretended authority of Sections 5 and 6 of ''An act to provide for the incorporation and organization, regulation, liquidation and supervision of trust companies, and the regulation of banks authorized to do business as a trust company,'' filed in the office of the Secretary of State February 28, 1913 (Laws 1913, p. 721, c. 354), the defendants superintendent of banks and Attorney General are threatening and intending to, and unless restrained will, compel the plaintiffs to discontinue business under their present names on account of their containing the word ''trust'' and to cease from holding any property in trust or doing any trust business. The Circuit Court overruled demurrers to the complaints and, the defendants declining to plead further, entered decrees according to the prayers of the complaints.  AFFIRMED.  REHEARING DENIED.

For appellants there was a brief over the names of *Mr. Andrew M. Crawford,* Attorney General, *Mr. Joseph A. Benjamin,* Assistant Attorney General, and *Mr. James W. Crawford,* Assistant Attorney General, with an oral argument by *Mr. Andrew M. Crawford.*

For respondent there was a brief over the names of *Messrs. Masters, Brice & Masters* and *Messrs. Angell*

*& Fisher,* with oral arguments by *Mr. W. Y. Masters* and *Mr. Forrest Fisher.*

MR. JUSTICE BURNETT delivered the opinion of the court.

The act in question, in Section 29 thereof, declares itself to be "supplementary to the rights, duties and powers of corporations organized under the laws of Oregon for the purpose of conducting a general banking business and for the examination and certification of titles to real estate," and says that parts of that law in conflict with the present act are repealed. Section 1 declares:

"Any number of persons, not less than five, citizens of the United States and residents of this state, may form a corporation to be known as a trust company, upon the terms and conditions and subject to the limitations prescribed by this act, and not otherwise."

It is required that articles of incorporation shall be executed in quadruplicate, and—

"after they have been approved by the superintendent of banks, who shall have power to require such changes as he may deem necessary, before granting his approval, said articles shall be filed in the manner required by the laws of the this state relating to corporations. * * The capital stock of every trust company now existing or hereafter incorporated shall be not less than $100,000; provided, however, that a trust company with capital stock of not less than $50,000 may be incorporated in cities having a population of less than 15,000. * * "

The terminology of the law is set forth in Section 2 of the act:

"Any corporation which has been or shall hereafter be incorporated under the laws of this state, providing for the incorporation and organization of banks, and

which is authorized by its articles of incorporation to act as executor, administrator, guardian, assignee, trustee, receiver, depository, or which has power under its articles of incorporation to discharge any duty, office or position of trust, and any corporation organized under Section 1 of this act shall be known as a trust company; and it shall be lawful for any trust company which shall have qualified under the provisions of this act to be appointed by order or decree of a court of record in this state or of another state or of the United States to act as executor, administrator, guardian, assignee, trustee, receiver, depository, and to discharge any duty, office or position of trust.''

Section 4, after declaring in what species of securities trust companies may invest their funds, states:

''The superintendent of banks shall have authority to require any trust company to dispose of any security which he shall not approve; and any trust company failing for thirty days after notice from the superintendent of banks to dispose of any such unapproved security may be proceeded against by the superintendent of banks, as provided in Section 20 of this act.''

It is said in Section 5:

''No person, firm, copartnership, association or corporation, which has not complied with the provisions of this act shall use in the name or title under which his, their, or its business is transacted either the words 'trust' or 'trustee,' nor in any manner advertise, solicit, receive, or transact business as a trust company. * * ''

Section 6 reads thus:

''Any person, firm, copartnership, association or corporation violating the provisions of Section 5 of this act, after ten days' notice given by the superintendent of banks, shall forfeit to the state banking fund one hundred dollars for each day during which such offense continues, said penalty to be recovered in the

name of the State of Oregon, in suit brought by the Attorney General, whose duty it shall be to enforce the provisions of this section.''

Section 19 provides penalties by fine and imprisonment to be visited upon any officer or employee of a trust company who shall by certain specified methods attempt to deceive anyone authorized to examine into the affairs of the company. It is said in Section 20:

''When it shall appear to the superintendent of banks, from any examination or report, that any trust company has committed any violation of the law, or is conducting its business in an unsafe or unauthorized manner, he shall, by an order under his hand and seal, direct the discontinuance of such illegal or unsafe or unauthorized practices and strict conformity with the requirements of the law, and with safety and security in its transaction; and whenever any such trust company shall refuse or neglect to make any such report, as hereinbefore required, or to comply with any such order, as aforesaid, such trust company shall be deemed insolvent, and the superintendents of banks shall forthwith take possession of the property, business and affairs of such trust company, in the manner herein provided.''

The remainder of this section authorizes the superintendent of banks in his discretion to force a trust company into liquidation when it seems to him that it is unsafe or inexpedient for it to continue to transact business. The act otherwise goes greatly into detail concerning the regulation and management of trust companies, but the foregoing excerpts are sufficient for the purpose of this opinion.

1. The amount of the capital stock of the Pacific Title & Trust Company is not stated in the pleadings, but at the hearing it was said to be less than $50,000, while the capital stock of the other plaintiff is alleged

to be $5,000.   The act in question is penal in its nature because it prescribes the severe penalty of $100 per day for the forbidden use of the words "trust" and "trustee," and dissolution of any trust company which fails for 30 days to obey the behest of the superintendent of banks, to dispose of security of which he shall not approve.   Without entering upon a discussion of the question of whether an attempt has been made to vest legislative authority in that officer whereby he may direct changes to be made in articles of incorporation at his pleasure, and whether his compelling a trust company to dispose of its property in his discretion is depriving it of its property without due process of law, it is sufficient to observe that arbitrary power, if tolerated at all, by a free people, must be strictly construed and reasonably exercised.

Speaking of penal statutes, it is said in 36 Cyc. 1180:

"Strictly and properly speaking, penal statutes are those imposing punishment for an offense committed against the state, which, under the English and American Constitution, the executive of the state has  the power to pardon.   In common use, however, this sense has been enlarged to include, under the term 'penal statutes,' all statutes which command or prohibit certain acts, and establish penalties for their violation, and even those which, without expressly prohibiting certain acts, impose a penalty upon their commission. Under this broader definition, penal statutes include not only those in which the penalty is recovered by a public prosecution and inures to the state, but also those permitting a recovery of the penalty by a private individual in an action of debt or *qui tam*.   The true test in determining whether a statute is penal is whether the penalty is imposed for the punishment of a wrong to the public, or for the redress of an injury to the individual. * * It is a fundamental rule in the construction of statutes  that penal statutes must be construed strictly.   By this rule, however, it is not

meant that they should be subjected to any strained or unnatural construction in order to work exemption from their penalties. Such statutes are to be interpreted by the aid of all the ordinary rules for the construction of statutes, and with the cardinal object of ascertaining the intention of the legislature. But, if the acts alleged do not come clearly within the prohibition of the statute, its scope will not be extended to include other offenses than those which are clearly described and provided for; and, if there is a fair doubt as to whether the act charged is embraced in the prohibition, that doubt is to be resolved in favor of defendant.''

2. The Pacific Title & Trust Company was incorporated January 14, 1901, and filed supplementary articles of incorporation June 30, 1906. The other plaintiff was incorporated May 2, 1906. A controlling question is whether such corporations come within the terminology of the act in question. In Section 2 quoted above there are two classes of corporations which are to be known as trust companies: One is a bank incorporated under the laws of the state providing for ''the incorporation and organization of banks,'' which is authorized by its charter to act in certain fiduciary capacities named in the act; and the other is a corporation organized under Section 1 of the act in question. Such corporations alone are subject to the provisions of the act under the principle of the mention of one being the exclusion of the other. In other words, the act concerns only those corporations defined by its own terms. The earliest law in the state specially providing for the organization and incorporation of banks was the act filed in the office of the Secretary of State February 25, 1907. It is plain that the two plaintiff corporations involved here were not organized under that act, because they were in ex-

istence and doing business long before its passage. Neither were they organized under Section 1 of the act in question, for that was not promulgated until February 28, 1913, long after their inauguration. It was within the province of the legislature to supply a definition of the term "trust company" for the purposes of the act, and it has done so in Section 2, thus limiting the appellation to two certain classes of corporations to neither of which the plaintiffs belong. This being a penal statute subject to strict construction, it cannot be extended beyond its express terms, and it would be wrong for the defendants to attempt to force the plaintiffs into liquidation under cover of the provisions of this act.

3. Still further, within the meaning of *Lorntsen* v. *Union Fishermen's Co.,* 71 Or. 540 (143 Pac. 621), we hold it to be an unreasonable exercise of the police power to compel the plaintiffs to abandon the word "trust" upon which their commercial standing has been founded, and their credit established through a long course of years. The same reasoning applies to the attempt to force them out of business unless they will multiply their capital tenfold. The terms of the contract between them and the state were accepted by the state. To arbitrarily require them to increase their capital stock would be to violate the terms of its contract as much as if A should agree to sell a piece of property to B for $5,000, and when B tendered the money the former should require him to pay $50,000. The exercise of the police power must be reasonable and have a rational application to the peace, health and safety of the people, and must not violate any constitutional right. Primarily, the exercise of the police power means regulation and not extinction. It would be properly applied in the pres-

ent instance by such rules as would fairly operate to promote the observance of their charter powers and responsibilities by the plaintiffs without direct destruction or violation of their vested rights, but it would be unreasonable to enforce such regulations as would practically obliterate them or compel them to a breach of their own contracts lawfully made.

For these reasons the Circuit Court was correct in its decision overruling the demurrer. The decree is affirmed in each case.

AFFIRMED.   REHEARING DENIED.

MR. CHIEF JUSTICE McBRIDE, MR. JUSTICE MOORE and MR. JUSTICE RAMSEY concur.