**CORVALLIS CREAMERY CO. v. VAN WINKLE, Atty. Gen. of State of Oregon, et al.**

(District Court, D. Oregon. July 5, 1921.)

No. 8559.

1. **Constitutional law ⬅81—Scope of police powers of states.**

Any legislation which has for its purpose the conservation of the health, comfort, safety, and welfare of society and by its terms is reasonably conducive thereto, and not merely an arbitrary fiat, is a legitimate exercise of the police power.

2. **Constitutional law ⬅70(3)—Expediency of legislation not questionable by courts.**

The courts cannot declare invalid legislation professedly enacted in the exercise of the police power unless, looking through mere forms and at the substance, it clearly has no real or substantial relation to the object, but is a clear unmistakable infringement of rights secured by fundamental law.

3 **Constitutional law ⬅81—All contracts and rights subject to police regulation.**

All contracts and all rights of property are subject to police regulation.

4. **Food ⬅1—Statute prohibiting use of misleading names or words in connection with substitute dairy products valid.**

Laws Or. 1921, p. 307, prohibiting the use by any person, firm, or corporation dealing in substitute dairy products as a part of a trade or corporate name, or in description of the product, or on labels, packages, or containers, or in advertising matter, 'of the words "milk," "butter," "cream," "creamery," "churn," "cheese," "cow," or "dairy," *held* within the police power of the state and valid.

In Equity. Suit by the Corvallis Creamery Company against I. H. Van Winkle, Attorney General, and C. L. Hawley, Dairy and Food Commissioner, of the State of Oregon. On motion to dismiss bill. Motion granted.

The Corvallis Creamery Company was regularly incorporated in June, 1906, under the general incorporation laws of the state, with its corporate name as above designated. For many years it has been engaged within the state in the manufacture and sale of unadulterated dairy butter and other dairy products, and has developed a lucrative business in dairy products. Plaintiff is now dealing also as a wholesaler in nut margarine, a product of the Nucoa Butter Company, a New Jersey corporation, which manufactures its stock in San Francisco, Cal., and sells to plaintiff. The product is packed in individual cartons, containing one pound net, which have printed thereon the following words and phrases, namely: "One pound net. Nucoa Nut Margarine. Cocoa-Nut Brand. For Table Use. Free from Animal Fats. Oleomargarine. Contains $1/10$ of $1\%$ Benzoate Soda. The Nucoa Butter Company. Reg. U. S. Pat. Office. We brand this product oleomargarine to comply with

---

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the law, but it is absolutely free from animal fats. The Nucoa Butter Company, San Francisco, California."

In selling the product, plaintiff makes both sale and delivery in the original boxes as received from the manufacturer, and in quantities not less than ten pounds. These boxes have stamped or printed thereon the following words: "Nucoa Nut Margarine. Cocoa-Nut Brand. The Nucoa Butter Company. Registered U. S. Pat. Office. Ingredients: Cocoanut Oil 76%, peanut oil 5%, caseine 2½%, salt 2½%, moisture 14%. Oleomargarine. Factory No. 2, First District, California. This product contains no animal fats, therefore not subject to Bureau of Animal Industry inspection. Nucoa Butter Company."

The plaintiff complains that the Legislative Assembly of the state has passed an act, penal in its nature, which by its first section provides: "That it shall be unlawful for any person, firm, corporation or association engaged in the business, in whole or in part, of manufacturing, selling, offering for sale, advertising or otherwise dealing in or with any product used or intended or designed to be used as a substitute for milk, butter, cheese or any other pure dairy product, to use as a part of his, their or its trade or corporate name, or as a name or description of his, their or its product, or to use in or on his, their or its labels, packages, containers or advertising matter or sales literature thereto relating, any of the following names: 'Milk,' 'butter,' 'cream,' 'creamery,' 'churn,' 'cheese,' 'cow,' or 'dairy,' nor shall any pictorial or other representations resembling any or all of the foregoing be used in or on the labels, packages, containers, advertising matter or literature referred to: Provided, however, that nothing in this act shall apply to products manufactured in this state for the purpose of shipping out of the state, and not offered for sale in this state, and that it shall not be unlawful to use the word 'milk' when immediately preceded by the word 'imitation' when displayed with equal prominence; and provided further, that this act shall not be construed to forbid a true statement of or concerning the ingredients or composition of any such product or of the contents of any such package or container, when such statement is not misleading or in any way deceptive, or to forbid a caution against the use of such product as a substitute for a genuine dairy product." Laws 1921, p. 307.

Among other things, it is alleged that plaintiff has among its customers in Oregon corporations which have and use as a part of their corporate names, respectively, the words ."milk," "butter," "cream," "creamery," and "dairy," and that defendants threaten with prosecution all such who deal in nut margarine, the product of the Nucoa Butter Company, because, it is asserted, they are operating in violation of statute regulating the use of such words. The purpose of the suit is to enjoin the defendants from thus interfering with the business of plaintiff; and the sufficiency of the complaint is questioned by a motion to dismiss.

Wood, Montague & Matthiessen, of Portland, Or., for plaintiff.

Wilson & Guthrie, of Portland, Or., and Willis Moore, Asst. Atty. Gen. of Oregon, for defendants.

WOLVERTON, District Judge (after stating the facts as above). [1] The constitutionality and validity of the statute are challenged by the proceeding. It is submitted whether the statute evidences a legitimate exercise of the police power. The police power, as is well understood, has relation to the promotion of the health, comfort, safety, and welfare of society. Any legislation which has for its purpose the conservation of any one of these objects, and by its terms is reasonably conducive thereto, and not merely an arbitrary fiat, must be considered to be a legitimate exercise of the power. Purity Extract Co. v. Lynch, 226 U. S. 192, 202, 33 Sup. Ct. 44, 57 L. Ed. 84.

[2] The legislative judgment as to the necessity or expediency of the legislation adopted is entitled to have its due scope and potency, not to be interfered with by the judicial department of the government. Indeed, the courts cannot interfere unless, looking through mere forms and at the substance of the matter, they can say that the statute enacted, professedly to conserve the public morals, health, or welfare of society, has no real or substantial relation to the object, but is a clear, unmistakable infringement of rights secured by the fundamental law. Booth v. Illinois, 184 U. S. 425, 429, 22 Sup. Ct. 425, 46 L. Ed. 623.

"It is plainly not enough," says the court, in Price v. Illinois, 238 U. S. 446, 452, 35 Sup. Ct. 892, 894 (59 L. Ed. 1400), "that the subject should be regarded as debatable. If it be debatable, the Legislature is entitled to its own judgment, and that judgment is not to be superseded by the verdict of a jury upon the issue which the Legislature has decided."

See, also, Hebe Co. v. Shaw, 248 U. S. 297, 303, 39 Sup. Ct. 125, 63 L. Ed. 255.

[3] All contracts and all rights of property are subject to police regulation. Lorntsen v. Union Fisherman's Co., 71 Or. 540, 545, 143 Pac. 621.

Neither the "contract" clause of the Constitution nor the "due process" clause thereof "has the effect of overriding the power of the state to establish all regulations that are reasonably necessary to secure the health, safety, good order, comfort, or general welfare of the community"; and "all contract and property rights are held subject to its fair exercise." Atlantic Coast Line v. Goldsboro, 232 U. S. 548, 558, 34 Sup. Ct. 364, 368 (58 L. Ed. 721).

Congress has by its legislation expressly recognized state authority through its legislative function to exercise its police powers respecting all articles known as oleomargarine, imitation, process, or adulterated butter, or any substance in the semblance of butter, or not the usual product of the dairy, and not made exclusively of pure or unadulterated milk or cream, to the same extent and in the same manner as though such articles or substances had been produced in such state, and such articles and substances are not exempt therefrom by reason of being introduced therein in original packages or otherwise. 3 Fed. Stat. Ann. (2d Ed.) 353 (Comp. St. § 8740). And while Congress itself has primarily dealt with the product known as oleomargarine, and the manner in which it shall be handled in trade, the state has heretofore denounced the act of selling as butter any article, product, or compound made wholly or partly out of any fat, oil, or compound thereof, not directly or wholly produced from pure, unadulterated milk or cream of the same, which has been or is colored to imitate yellow butter produced from pure unadulterated milk or cream of the same. Oregon Laws, § 8725; 1915 Laws of Oregon, c. 343, § 72. The state has also dealt with the subject of food and articles which enter into the composition thereof, and the misbranding of the same, to protect the public from having foisted upon it adulteration, or food containing poisonous or deleterious substances. Section 8687, Oregon Laws; 1915 Laws of Oregon, c. 343, § 35.

[4] But, notwithstanding these regulations, the Legislative Assembly has obviously deemed it wise to enact further legislation to prevent, as the title of the act signifies, the use of the words "milk," "butter," "cream," "creamery," "churn," "cheese," "cow," or "dairy," or pictorial or other representations thereof, by manufacturers, vendors, dealers, or advertisers of products intended, used, or devised as substitutes for pure dairy products.

The single question presented is whether the act constitutes a reasonable exercise of the police power; or, putting it conversely, whether it is merely arbitrary denunciation of an act or supposed practice without any reasonable basis for its promulgation as a law or regulation. The act can be sustained only upon the ground that it is reasonably calculated in some way to promote the health, comfort, safety, or welfare of society.

Concretely, the act denounces the use by any person, firm, or corporation dealing in any product used or designed to be used as a substitute for milk, butter, and the like as a part of his or their trade or corporate name, or as a name or description of his or their product, or to use in his or their labels, packages, containers, or advertising matter or sales literature any of the words or names indicated both in the title and in the act.

The act has three aspects; that is, it is directed to the use of these words (1) in the trade or corporate name, (2) as descriptive of the product, and (3) to the use of such words upon labels, containers, or in advertising matter.

It will not be gainsaid that the pure dairy product is one of the most wholesome and nutritious of all food products, and it enters largely into the food consumption of the world. No other substance from which butter, so denominated, is manufactured contains exactly the same food or nutritive elements or ingredients as does the pure dairy product. This affords some reason, at least, why the public should be protected to the utmost against the imposition upon it of other articles of manufacture of inferior food properties under the guise of butter, cheese, and the like manufactured from pure dairy products. Experience has taught us that the strenuous competition in trade circles affords an inducement, in some directions at least, to disregard the strict observance of fair exposition of products in the market, and goods of inferior grade are often so represented as to be obtruded upon the public as goods of a better or superior or different quality. Food products are no exception to the practice. This reaches the health and general weal or welfare of the community, and the public is entitled to be protected against the foisting upon it, through any means, of any inferior or different product as and for a pure dairy product. This must be conceded.

Now, the circumstances are, as presented by the present controversy, that plaintiff was incorporated prior to the adoption of the act in question, that it has in its corporate name the word "creamery," and that it is dealing in a product known in the trade as "Nucoa Butter Margarine," a product of the Nucoa Butter Company, manufactured in San Francisco, principally of cocoanut oil and peanut oil, and that, at

the same time it is engaged in the manufacture and sale of dairy products.

The effect of the act, if it is to be upheld, is to deprive the plaintiff of either the right to use the word "creamery" in its corporate name or the right to deal in the product of the Nucoa Butter Company. It must abandon either the word "creamery" in its corporate name or its traffic in the Nucoa Butter Company's product. As is said by counsel in their brief:

"The statute does not in any way prohibit those dealing in dairy products from also dealing in oleomargarine."

But it does prohibit the dealing in both if the corporate name is descriptive of the dairy product in the manner inhibited.

It is urged with much force that the statute prohibits the use of the proscribed terms without regard to whether or not as used they tend or may tend to deceive, and this irrespective of any such intention or apparent intention on the part of those using them. This is the crux of the controversy.

As I have shown, the statute not only inhibits the use of the proscribed words in the corporate name, but also in the description of the substitute products and in advertising matter pertaining thereto. So that the statute really has a wider scope than the circumstances of this case portend. It must therefore be sustained·as a whole or invalidated as a whole. Extending to the Legislature its proper function of judging for itself the necessity and exigency for adopting the measure, I am unable to say that it is without sufficient reason to support it, or that it is void as an arbitrary fiat of supposed legislative power. The act must therefore be held to be valid. The authorities heretofore cited lead to this conclusion.

The bill of complaint will be dismissed, at plaintiff's cost.

