Argued February 25, decided March 4, rehearing denied April 1, 1913.

### SPAULDING *v.* McNARY.*

(130 Pac. 391.)
(130 Pac. 1128.)

**Constitutional Law—Police Power—State Exercise.**

1. The power of a state, by proper legislation, to protect the health, promote the morals, and prevent the introduction of any infected articles of trade that would necessarily injure property or affect persons is a matter of self-preservation, the exercise of which is not limited by any clause of the Federal Constitution.

**Commerce—Interstate Commerce — Regulation — Sale of Carriages.**

2. The sale of carriages within the state by soliciting agents going through the country is not so inherently harmful as to entitle the state to regulate the same in the exercise of police power, where the sales constitute interstate commerce, though the conduct of the agents may not be governed by the strictest rules of probity in business.

**Commerce—Interstate Commerce—What Constitutes.**

3. Plaintiff, a carriage manufacturer in Iowa, sold the same through Oregon by means of agents who traveled through the country taking orders for carriages, which were sent to plaintiff's place of business in Iowa, where another agent would ascertain the financial responsibility of the proposed buyer, and, if found to be good, plaintiff would ship the vehicle to Oregon, when it would be delivered by another agent, thereby transferring title to the buyer. Held that, under such system, the carriages were in fact sold in Iowa, and the sales constituted interstate commerce.

**Injunction—Void Statute—Enforcement**

4. Injuction will lie to prevent officers from enforcing a void statute, the enforcement of which will affect a party's property rights.

**Commerce—Interstate Commerce — State Statutes — Licenses—
        "Peddlers."**

5. Section 4961, L. O. L., defining "peddlers" to include every person who, for himself or as agent of another, goes from place to place or from house to house selling, or offering to sell, for future delivery, by sample or catalogue, at retail to individual purchasers who are not dealers in the article sold, any goods or wares or merchandise, and Section 4963, imposing a license tax thereon, in so far as it purported to include agents for nonresidents selling goods in interstate commerce, amounted to a tax on such commerce, and was therefore void.

## ON REHEARING.

**Injunction—Action—Pleading—Anticipating Defenses.**

6. Where the complaint, in an action to enjoin criminal prosecutions for the violation of a statute imposing a license tax on agents for nonresidents selling goods in interstate commerce, fairly showed that the goods when ordered were in another state, the complaint was sufficient in that respect, and it was not incumbent upon plaintiff to anticipate a defense and to set forth matters which properly belonged to the adverse party to allege.

**Appeal and Error—Rehearing—Grounds—Objection Not Taken
        to Pleadings.**

7. Where defendant, in an action to enjoin criminal prosecution for the violation of a statute imposing a license tax for nonresidents selling goods in interstate commerce, in which the complaint sufficiently showed that the goods when ordered were outside the state, filed no answer averring that the goods sold by plaintiff's agents had been shipped into this State in original packages before orders therefor had been taken, his petition for a rehearing, on the ground that it had not been shown that the goods were outside the State when ordered, should be denied.

---

*The authorities on the question whether a license or occupation tax on hawkers and peddlers, and persons engaged in soliciting orders by sample or otherwise, is a violation of the commerce clause are collated in notes in 19 L. R. A. [N. S.] 297 and 28 L. R. A. [N. S.] 265.

REPORTER.

From Marion: WILLIAM GALLOWAY, Judge.

Statement by MR. JUSTICE MOORE.

This is a suit by H. W. Spaulding, F. E. Spaulding, and E. H. Spaulding, partners, as the Spaulding Manufacturing Company, against John H. McNary, as District Attorney of the Third Judicial District of Oregon, and certain of his deputies, and B. F. Mulkey as District Attorney of the First Prosecuting Attorney District of this State, to enjoin the maintenance of criminal proceedings against the plaintiffs' agents for alleged violations of a statute. The complaint, stripped of a vast amount of wholly immaterial matters, charges in substance that at all times stated therein the plaintiffs were and are citizens and residents of Iowa, and engaged at Grinnell in that state in manufacturing vehicles which are sold by their agents in various sections of the Union, including the several counties of Oregon, in which latter places the privilege of conducting such business has become and is a valuable property right, the exercise of which results in lucrative profits; that in negotiating such sales one of plaintiffs' agents, driving a pair of horses hitched to a wagon, canvasses a part of this State, and if he finds a purchaser, a written order is taken for a specified style of carriage, to be furnished in 30 days, or as soon as transportation will permit, and thereupon another agent at Grinnell, Iowa, ships into Oregon the required vehicle, upon the delivery of which, by another of plaintiffs' agents, the sale is completed; that in transacting such business in the manner indicated the plaintiffs' agents have been and are threatened by the defendants with the prosecution of criminal actions for alleged violations of Sections 4961-4967, L. O. L., which enactment is void as to plaintiffs, in that it violates certain clauses of the federal Constitution and of the organic act of Oregon; that such

proceedings will result in irreparable loss and damage to the plaintiffs in the distribution of their traffic in Oregon, for the redress of which injuries they have no plain, adequate, or speedy remedy at law. A demurrer to the complaint was sustained on the ground that it did not state facts sufficient to warrant equitable intervention, and, the plaintiffs declining further to plead, the suit was dismissed, and they appeal.          REVERSED.

For appellants there was a brief with oral arguments by *Mr. A. C. Lyon* and *Mr. Ralph R. Duniway*.

For respondents there was a brief over the names of *Mr. John H. McNary*, District Attorney of the Third Judicial District of Oregon, *Mr. Roswell L. Conner*, Deputy District Attorney, *Mr. Joseph E. Sibley*, Deputy District Attorney, *Mr. Walter C. Winslow*, Deputy District Attorney, and *Mr. Benjamin F. Mulkey*, District Attorney of the First Prosecuting Attorney District of Oregon, with an oral argument by *Mr. Winslow*.

MR. JUSTICE MOORE delivered the opinion of the court.

It is maintained *inter alia* that, since it is admitted that the plaintiffs were and are citizens and residents of another state and engaged therein in business, and as a branch thereof consists in selling by agents, their manufactured products in Oregon, the license fee prescribed by the statute referred to is a tax, undertaken to be imposed in contravention of the third clause of Section 8 of Article I of the Constitution of the United States, to regulate commerce among the several states, and the enactment under consideration is therefore void as to plaintiffs and invades their property right, and, such being the case, an error was committed in sustaining the demurrer, and in not granting the equitable relief sought.

The statute in question, as far as deemed involved herein, defines the word "peddler" according to the ordi-

nary meaning of the term, except that an agent of another is included within the class. 15 Am. & Eng. Ency. Law (2 ed.) 291. The enactment further declares:

"Every person who, for himself or as agent of another, goes from place to place or from house to house, selling or offering to sell for future delivery, by sample or catalog, at retail, to individual purchasers who are not dealers in the articles sold, any goods, or wares or merchandise." Section 4961, L. O. L.

"Any peddler who shall, without having first obtained a license so to do in the manner in this act provided, peddle any goods or wares or merchandise in any county of this State, shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be punished," etc. Section 4962, L. O. L.

"Every peddler, whether principal or agent, shall before commencing business in any county of the State, make application in writing under oath, to the county treasurer for the county in which he proposes to make sales for a county license. * * He shall also at the same time make a special deposit of money with the county treasurer aforesaid, equal to the amount of license fee which he shall pay to the county treasurer, which license fee shall be as follows: (1) Peddler on foot, $25. (2) Peddler with one horse and a wagon, $100. (3) Peddler with two horses and wagon, $150. (4) Peddler with any other conveyance, $300." Section 4963, L. O. L.

The second definition of the word "peddler" as hereinbefore quoted is criticised by plaintiffs' counsel as not applicable to a commercial traveler who, like the agents of their clients, go from place to place exhibiting samples or cuts of manufactured goods, wares, or merchandise, for which orders are taken. We do not think it necessary to enter into a discussion of the question of whether or not the business conducted by plaintiffs' agents comes within the designation of interstate commerce. It has been intimated by some courts of last resort that a "peddler" is a person who, in going from house to house with goods for sale, resorts to disreputable methods in

seeking admission to homes in order to defraud customers, and for other nefarious purposes, and that, such being the case, it is proper for a state in the exercise of its police power to place such restrictions upon that business, though it may be interstate commerce, as will protect the public from imposition.

1, 2. The power of a state by proper legislation to protect the health, to promote the morals, and to prevent the introduction of any infected articles of trade that would necessarily injure property or affect persons is a matter of self-preservation, and such rights are not intended to be invaded under any clause of the Federal Constitution, for an injury to the welfare of the State is a detriment to the nation. If one or more persons engaged in any particular branch of business has recourse to dishonorable methods in order to make a sale of his goods, and for that reason all business of that class must be suspended under an exercise of the police power of a state, the result would necessarily be the interruption of all legitimate traffic; for it is safe to predict that in every branch of lawful commerce it will be found that some dishonest persons are engaged. It must be conceded that the sale of some kinds of goods and the transaction of some classes of business are in themselves, regardless of the persons connected therewith, so inherently harmful as to violate every sense of propriety and modesty, and in such cases the State rightfully may and necessarily ought immediately to put a stop to the flagitious traffic. Within the category thus condemned the sale of carriages cannot be included, and though there may be found one or more agents soliciting sales of buggies whose lives and conduct are not governed by the strictest rules of probity, the business in which they are engaged is not essentially unlawful, and therefore not subject to an exercise of the police power.

3. So far as disclosed by the complaint herein, the material averments of which are admitted by the demur-

rer, it appears that when a written order for the purchase of a carriage is secured, the requisition is sent to Grinnell, Iowa, where, if the plaintiff's agent who has charge of this branch of the business finds the proposed buyer is financially responsible, he ships into Oregon the desired vehicle, which is delivered by another agent, thereby transferring the property and the title to the purchaser. By this manner of conducting the plaintiffs' business the goods, wares, and merchandise are in fact sold in Grinnell, Iowa, and do not, when shipped into this State for delivery become a part of the general mass of property in Oregon, so as to exempt such vehicles from the provision of the Federal Constitution, to which reference has been made.

4. The rule is well established that if the threatened enforcement by prosecuting officers of a void statute will affect the property rights of a party, injunction will lie to prevent the menace from being carried into effect; and that the conduct of such officers, in the case indicated, are their personal acts in which the State is not involved. *Dunn* v. *University of Oregon,* 9 Or. 357; *Salem Mills Co.* v. *Lord,* 42 Or. 82 (69 Pac. 1033: 70 Pac. 832) ; *Sandys* v. *Williams,* 46 Or. 327 (80 Pac. 642) ; *Hall* v. *Dunn,* 52 Or. 475 (97 Pac. 811: 25 L. R. A. [N. S.] 193) ; *Portland Fish Co.* v. *Benson,* 56 Or. 147 (108 Pac. 122) ; *Kellaher* v. *City of Portland,* 57 Or. 575 (110 Pac. 492: 112 Pac. 1076) ; *Spaulding* v. *Evenson* (C. C.) 149 Fed. 913; *Spaulding* v. *Evenson* (C. C.) 150 Fed. 517 (82 C. C. A. 263: 9 L. R. A. [N. S.] 904).

5. The remaining inquiry is whether or not the exacting of a license fee, as a condition precedent to the right to solicit orders that were to be filled by shipping goods from another state into this, amounts to a tax upon interstate commerce, and for that reason is void as to the plaintiffs.

In the case of *Robbins* v. *Shelby Taxing District,* 120 U. S. 489 (7 Sup. Ct. 592: 30 L. Ed. 694), Sabine Rob-

bins, a citizen and resident of Ohio, was engaged in the taxing district of Shelby County, Tennessee, in soliciting trade by the use of samples for the firm of Rose, Robbins & Co., doing business in, and all the members thereof being citizens and residents of, Cincinnati, Ohio. A statute of Tennessee required that all persons not having a regular licensed house in the taxing district, who offered for sale or sold goods, wares, or merchandise therein by sample, should be required to pay $10 per week or $25 per month, and no license should be issued for a longer period than three months. While soliciting trade for such firm and exhibiting samples·for the purpose of effecting sales, and without having paid the license, Robbins was arrested, tried, convicted, and fined, and the judgment was affirmed by the Supreme Court of the State of Tennessee, which held that the statute relating to such license was constitutional and valid. A writ of error was thereupon taken to the Supreme Court of the United States which, in reversing the judgment, held that interstate commerce could not be taxed at all by a state, even though the same amount of tax should be laid on domestic commerce, or that which is carried on solely within the state. In 'that case, however, Mr. Chief Justice WAITE, Mr. Justice FIELD, and Mr. Justice GRAY dissented.

In *Le Loup* v. *Port of Mobile*, 127 U. S. 640 (8 Sup. Ct. 1383 : 32 L. Ed. 311), it was unanimously determined that, where a telegraph company which was doing business of transmitting messages between different states, and had accepted and was acting under the telegraph law passed by Congress July 24, 1866, no state within which the company saw fit to establish an office could enforce upon it a license tax, or require it to take out a license tax, or require it to take out a license for the transaction of such business.

In *Asher* v. *Texas*, 128 U. S. 129 (9 Sup. Ct. 1: 32 L. Ed. 368), it was ruled that a state law, exacting a license

tax to enable a person within the state to solicit orders and make sales there for a person residing within another state, was repugnant to the clause of the Constitution of the United States giving Congress power to regulate commerce among the several states, and that such statute was void.

The rule thus announced has been followed by an unbroken line of decisions by the United States Supreme Court, and by most of the state courts of last resort, as well as by the federal courts. *In re Kinyon,* 9 Idaho, 642 (75 Pac. 268: 2 Ann. Cas. 699). See, however, the very interesting notes to the case of *People* v. *Wemple,* 27 Am. St. Rep. 542.

In *State* v. *Bayer,* 34 Utah, 257 (97 Pac. 129: 19 L. R. A. [N. S.] 297, several agents of the plaintiffs herein were convicted of violating the provisions of a statute of Utah similar to our law with respect to licensing solicitors, and in reversing the judgment it was held that the enactment contravened the commerce clause of the Federal Constitution.

So, too, in *Smith* v. *Farr,* 46 Colo. 364 (104 Pac. 401), in passing upon the validity of a similar statute of Colorado, it was ruled that Congress possessed the sole power to regulate commerce between the several states, and hence interstate commerce should not be taxed by a state.

We consider, therefore, that the statute under consideration in as far as it relates to the plaintiffs, is an attempt to exact a tax on interstate commerce, and for that reason the enactment is void as to them.

As the facts involved appear to have been admitted, the decree should be reversed and one entered here granting the relief prayed for in the complaint, and it is so ordered.　　REVERSED: DECREE RENDERED.

Decided April 1, 1913.

## ON PETITION FOR REHEARING.

(130 Pac. 1128.)

MR. JUSTICE MOORE delivered the opinion of the court.

In a petition for a rehearing it is maintained by defendants' counsel that they are at a loss to understand where this court ascertained the facts, as outlined in the opinion, with respect to the vehicles being outside Oregon when orders therefor were taken. Paragraph 7 of the complaint, as far as material herein, reads as follows:

"That plaintiffs are now, and for several years past have been, engaged in carrying on their said business solely in the following manner: One of their agents, called a canvasser or salesman, solicits in his territory for customers; when he finds a purchaser, he takes a written order for a certain style of vehicle to be delivered to said customer in 30 days, or as soon as transportation will permit; thereafter a separate agent, called a deliveryman, delivers the vehicle to the purchaser in pursuance of said order, and the sale is then completed."

A part of paragraph 1 of the complaint reads:

"That C. A. Hanson, of Grinnell, Iowa, is employed as one of their (the plaintiff's) agents and as superintendent of agents, and is engaged in the delivering of said vehicles manufactured by plaintiff in Iowa and shipped into the State of Oregon, to be delivered to customers in the various counties of the State of Oregon."

In the brief of plaintiffs' counsel it is said:

"The facts as to the conduct of plaintiffs' business are alleged in the complaint and admitted by the demurrer. These show that the course of business was carried on by plaintiffs by their agents soliciting orders for future delivery, the orders being thereafter sent to the superintendent who investigated the financial condition of the signer; and if satisfied that the sale would be a good

business risk, provided it were made on credit, he would order the vehicle and later direct a separate deliveryman to deliver the vehicle to the purchaser at his home."

6. It is believed that the excerpt last quoted is fairly deducible from the averments of the complaint, as hereinbefore set forth, from which it is reasonably to be implied that, when an order for a vehicle was secured in Oregon, the written application was immediately forwarded to Grinnell, Iowa, to Superintendent Hanson, and, if he found the customer financially responsible, he ordered a vehicle of the class desired to be shipped to one of plaintiff's agents in this State, with directions to deliver the carriage to the purchaser.

In defendant's brief it is stated:

"Counsel do not show in their complaint but what the goods are shipped to the State of Oregon, the original packages there broken, and the goods disseminated among the goods of this State, and thereafter sold and peddled in the manner described in paragraph 7 of plaintiffs' complaint. * * They want us to infer, from the fact that their head office is in a foreign state, that the goods are outside of the State of Oregon when the orders are taken, but this is not their allegation, and, what is more, is not a fact. * * In order for counsel to show that their business is interstate business, their complaint must allege that the goods are without the jurisdiction of the State of Oregon when the order is taken."

Since it fairly appears from the averments of the complaint that the vehicles when ordered were in Iowa, the plaintiff's primary pleading was sufficient in that respect. It was not incumbent upon their counsel to anticipate a defense, and thereby set forth matters which properly belonged to the adverse party to allege. Bliss, Code Pl. (3 ed.), § 200.

7. Defendants' counsel had an opportunity first to move to strike from the complaint the great amount of

wholly immaterial matter, and, after a ruling on the motion, to file an answer averring that the vehicles agreed to be sold by plaintiffs' agents had been shipped into Oregon before orders therefor had been solicited, that the original packages had been broken, and the goods thus contained had become commingled with other property in the State; but, since they did not avail themselves of this filing occasion, the petition for a rehearing should be denied, and it is so ordered.

REVERSED: DECREE RENDERED: REHEARING DENIED.