Submitted on briefs February 7, reversed February 29, 1916.

# CHAN SING *v.* ASTORIA.

(155 Pac. 378.)

**Injunction—Void Statute.**

1. A court of equity will sustain a suit to enjoin proceedings under a void law.

**Municipal Corporations—Municipal Charters—Judicial Notice.**

2. It was error to strike out two sections of the city charter set out in the original complaint, as Section 90, L. O. L., providing that, in pleading an ordinance of a city or town, it shall be sufficient to plead the title and date of approval, and the court shall then take judicial notice thereof, does not provide an exclusive rule of pleading, nor deprive the pleader of the right to state the provisions of either a charter or ordinance about which a question is raised.

**Evidence—Municipal Charters—Judicial Notice—"Acts of Legislative Department."**

3. Under Section 729, subdivision 3, L. O. L., providing that the courts will assume knowledge of "public and private official acts of legislative, executive, and judicial departments of this state and of the United States," the courts will not take judicial notice of municipal charters and ordinances.

**Municipal Corporations—Power to Pass Ordinances—Charter.**

4. A city's charter is the limit of its prerogative, and its authority to pass an ordinance must be expressed or necessarily implied.

**Municipal Corporations—Police Power.**

5. The reasonableness of an ordinance under the police power is a question for the courts.

> [As to police power of municipal corporation, see note in 104 Am. St. Rep. 638.]

**Constitutional Law—Police Power—Right to Engage in Occupation.**

6. Under Article I, Section 20, of the Constitution, providing that "no law shall be passed granting to any citizen or class of citizens, privileges or immunities which, upon the same terms, shall not equally belong to all citizens," an ordinance, passed under authority of the city charter, which regulated the opening and closing hours of those who operated or conducted stores, dealing in general merchandise, groceries, clothing, boots and shoes, dry-goods, jewelry, meats, and hardware, but omitted all reference to other businesses of similar nature, regulation of which is authorized by the city charter, made an arbitrary distinction between those mentioned and those omitted, in view of the object to be attained by the charter "to secure the peace and good order of the city and the health of its inhabitants," and was not a proper exercise of the police power.

From Clatsop: James A. Eakin, Judge.

In Banc.     Statement by Mr. Justice Burnett.

This is a suit by Chan Sing, Lum Sue, George Howe, Alex Karsen and N. Goldberg to enjoin the City of Astoria and its officers from enforcing an ordinance requiring certain classes of business to close at fixed hours of each day in the week. The original complaint alleged the incorporation of the city as a municipality under acts of the legislative assembly and "pursuant to acts amendatory thereof adopted by the legal voters of said municipality." It is averred:

"That subdivision 3, Section 38, of the charter of said municipality is in these words as follows, to. wit: '3. To license, tax and regulate auctioneers, hotel runners, solicitors, book agents, real estate and insurance agents, brokers, taverns, boarding-houses, hawkers, peddlers, pawnbrokers, barbers, bakers, dealers in general merchandise, clothing, boots and shoes, groceries, dry-goods, meat markets, hardware, tinware, crockery, glassware, millinery, dealers in cigars and tobacco, fruit and confectionery, lawyers, doctors, furniture stores, dentists, book and stationery stores, commission merchants, tailoring establishments, jewelry stores, and all offensive trades and occupations, and to define what shall constitute the same.' "

It is further alleged that Section 39 of the charter reads thus:

"The power and authority given to the council by Section 38 can only be exercised or enforced by ordinance, unless otherwise provided, and a majority of the council may pass any ordinance or make any by-law not repugnant to the laws of the United States or of this state, necessary or convenient for the carrying such power and authority, or any part thereof into effect, and as may be necessary to secure the peace and good order of the city, and the health of its inhabitants."

The pleading states that so far as it could lawfully do so the common council of the defendant city, on December 21, 1914, passed an ordinance, of which Section 1 is here set down:

"Every person, firm, company or corporation owning, operating, or conducting any store within the City of Astoria, Clatsop County, Oregon, selling, and dealing in general merchandise, groceries, clothing, boots and shoes, dry-goods, jewelry, meats, and hardware, shall close or cause to be closed, such place or places of business at the hour of six (6) o'clock P. M. of each day of the week, excepting Saturday, on which day the same shall close at the hour of nine (9) o'clock P. M. and such place or places of business hereinbefore designated, shall be kept closed until the hour of five (5) o'clock of the morning following and all such place or places of business shall be kept closed and not transact any business therein on or during the first day of the week, commonly called Sunday, provided, however, that the provisions of this ordinance shall not be effective for a period of one (1) week preceding Christmas Day, the 25th day of December of each and every year."

The plaintiffs litigating for themselves and all the others in similar situation describe their several establishments, one as the owner of a clothing store and tailoring shop, another as a grocery store, a third as a novelty store, and the fourth and fifth as clothing stores. They say they derive a large portion of their trade from workingmen and their families who are habitually employed in various vocations from 7 A. M. to 6 P. M. daily except Sunday; that many others are engaged in fishing in which the hours of labor are very irregular and sometimes much prolonged, so that it is inconvenient for such people to make purchases before 6 o'clock in the evening. With but one exception the plaintiffs reside with their families in the rear of their stores and employ no clerks or other assistance except

that given by members of their families or those directly interested in the business. According to the allegations of the complaint, there is in Astoria a class of business men owning large stores, denominated in the pleading "principal merchants," all of whom close their stores at 6 o'clock in the evening because the clerk's union, whose members they employ, refuses to work after that hour. It is further stated that there are various stores and places of business in the city not enumerated or included within the terms of the ordinance and which will not be affected thereby, but which will continue to remain open every night of the week until 9 or 10 o'clock and all day on Sunday. In this class the plaintiffs enumerate drug stores, which in addition to drugs and medicines, in every instance sell stationery, perfumes, toilet articles and other goods mentioned, besides stores devoted to the sale of cigars, millinery, fruit and confectionery, furniture, books and stationery, all of which will be exempt from the ordinance. They say that if the city law in question is enforced against them, they will not only be compelled to close their business and lose their trade, but also ingress to and egress from their dwelling quarters will be seriously prejudiced. On motion of the defendants the court struck out the quotations from the charter of the city, together with all allusion to other occupations not subject to the ordinance. Other matter was stricken out, but, owing to the fact that it was described by reference to words and lines of the original complaint which is not before us, the printed abstract is unintelligible on that subject. An amended complaint was filed, omitting the matter which had been elided from the original. To this latter statement of the grievance of the plaintiffs the court sustained a demurrer, and, as they refused to plead fur-

ther, rendered a decree dismissing the suit. This appeal followed, wherein the plaintiffs assign as error the striking out of part of their original complaint and sustaining the demurrer to the amended pleading.

Submitted on briefs without argument under the proviso of Supreme Court Rule 18: 56 Or. 622 (117 Pac. xi).                                   REVERSED.

For appellants there was a brief over the names of *Mr. Edward E. Gray* and *Mr. Murray C. Wheat.*

For respondents there was a brief over the name of *Mr. A. W. Norblad.*

MR. JUSTICE BURNETT delivered the opinion of the court.

1. A court of equity will sustain a suit to enjoin prosecutions under a void law: *Spaulding* v. *McNary,* 64 Or. 491 (130 Pac. 391, 1128).

2–4. It is stated in Section 90, L. O. L.:

"In pleading an ordinance or enactment of any incorporated city, town, or village, or a right derived therefrom, * * it shall be sufficient to refer to such ordinance or enactment by its title and the date of its approval, and the court shall thereupon take judicial notice thereof."

This does not provide an exclusive rule of pleading, nor deprive the pleader of the right to state the provisions of either a charter or an ordinance about which the question is raised. In *Birnie* v. *La Grande,* 78 Or. 531 (153 Pac. 415), we held that the court would not take judicial notice of initiative charters of cities and towns. Under Section 729, subdivision 3, L. O. L., the courts assume knowledge of "public and private official acts of the legislative, executive, and judicial departments of this state, and of the United States."

Such acts of cities and towns are not within that category, and must be pleaded in some form. Before the adoption of the initiative system in this state, the courts under the quoted clause of Section 729, L. O. L., took notice of municipal charters because they were always enactments of the legislative assembly. Under the present *régime,* however, it would be impracticable, besides beyond the scope of the statute, for any court to take judicial notice of all the initiative measures adopted by every municipality from the metropolis to the smallest crossroads village in the state. The plaintiffs were well within the rule of pleading when they set out the two sections of the charter mentioned, and it was error to strike out that part of the original complaint. It was also permissible for them to point out other occupations similar in some respects to their own, which would not be affected by the ordinance, all for the purpose of challenging the justice of the classification under which the city council seems to have proceeded. Section 39 of the charter provides a manner of carrying into effect the power conferred by the excerpt from the preceding section of that instrument. It is said that the council may pass any ordinance not repugnant to the laws of the United States or of this state necessary or convenient for carrying its prerogative into effect, ''and as may be necessary to secure the peace and good order of the city, and the health of its inhabitants.''

The legislation in question can be justified, if at all, only by virtue of the *quantum* of the police power confided to the city by the legislative department of the government or by the initiative of its own people. Its charter is the limit of a city's prerogative, and its authority to pass an ordinance must be expressed or necessarily implied: *Corvallis* v. *Carlile,* 10 Or. 139

(45 Am. Rep. 134); *MacDonald* v. *Lane,* 49 Or. 530 (90 Pac. 181); *Jeffery* v. *Smith,* 63 Or. 514 (128 Pac. 822); *Rosa* v. *Bandon,* 71 Or. 510 (142 Pac. 339). According to the Astoria charter under discussion, an indispensable ingredient of such a measure is its necessity to secure the peace and good order of the city and the health of its inhabitants. Unless this feature is subserved or the measure adopted bears some essential relation or furnishes some proper support to these objects of the police power, it is of no effect.

5. It is a rule well established in this state that the reasonableness of an ordinance on such subjects is for the court to determine: *Ex parte Wygant,* 39 Or. 429 (64 Pac. 867, 87 Am. St. Rep. 673, note, 54 L. R. A. 636). It is said in *Mugler* v. *Kansas,* 123 U. S. 623, 661 (31 L. Ed. 205, 8 Sup. Ct. Rep. 273, 297):

"The courts are not bound by mere forms, nor are they to be misled by mere pretenses. They are at liberty—indeed, are under a solemn duty—to look at the substance of things, whenever they enter upon the inquiry whether the legislature has transcended the limits of its authority. If, therefore, a statute, purporting to have been enacted to protect the public health, the public morals, or the public safety, has no real or substantial relation to those objects, or is a palpable invasion of rights secured by the fundamental law, it is the duty of the courts to so adjudge, and thereby give effect to the constitution."

To the same effect is *State* v. *Redmon,* 134 Wis. 89 (114 N. W. 137, 126 Am. St. Rep. 1003, 15 Ann. Cas. 408, 19 L. R. A. (N. S.) 229); *Connolly* v. *Union Sewer Pipe Co.,* 184 U. S. 540, 560 (46 L. Ed. 679, 22 Sup. Ct. Rep. 431); *State* v. *Wright,* 53 Or. 344 (100 Pac. 296, 21 L. R. A. (N. S.) 349, note); *State* v. *Miller,* 54 Or. 381 (103 Pac. 519); *Spaulding* v. *McNary,* 64 Or. 491 (130 Pac. 391, 1128); *Kellaher* v. *City of Portland,* 57 Or.

575 (110 Pac. 492, 112 Pac. 1076). In *Grossman* v. *City of Oakland,* 30 Or. 478 (41 Pac. 5, 60 Am. St. Rep. 832, 36 L. R. A. 593, note), the principle is laid down that a city cannot prohibit the free use of property by the owner so long as such use does not interfere with the rights of others. Speaking about the matter of classification under the police power in *Ladd* v. *Holmes,* 40 Or. 167, 173 (66 Pac. 714, 716, 91 Am. St. Rep. 459), Mr. Justice WOLVERTON says:

"The greater difficulty centers about the classification. It may not be arbitrary, and requires something more than a mere designation by such characteristics as will serve to classify. The mark of distinction must be something of substance, some attendant or inherent peculiarity calling for legislation suggested by natural reason of different character to subserve the rightful demands of governmental needs. So that, when objects and places become the subject of legislative action, and it is sought to include some and exclude others, the inquiry should be whether the distinctive characteristics upon which it is proposed to found different treatment are such as in the nature of things will denote, in some reasonable degree, a practical and real basis for discrimination."

The principle is concisely stated by Mr. Chief Justice CORLISS in *Edmonds* v. *Herbrandson,* 2 N. D. 270 (50 N. W. 970, 14 L. R. A. 725):

"The classification must be natural, not artificial. It must stand upon some reason, having regard to the character of the legislation."

Again, Mr. Justice BEASLEY, in *State* v. *Hammer,* 42 N. J. Law, 440, states the doctrine thus:

"But the true principle requires something more than a mere designation by such characteristics as will serve to classify, for the characteristics which thus serve as the basis of classification must be of such a nature as to mark the objects so designated as pecu-

liarly requiring exclusive legislation. There must be substantial distinction, having a reference to the subject matter of the proposed legislation, between the objects or places embraced in such legislation and the objects or places excluded. The marks of distinction on which the classification is founded must be such, in the nature of things, as will, in some reasonable degree at least, account for or justify the restriction of the legislation.''

See, also, *State ex rel.* v. *Swigert*, 59 Or. 132 (116 Pac. 440); *Palmberg* v. *Kinney*, 65 Or. 220, 228 (132 Pac. 538); *Lorntsen* v. *Union Fisherman's Co.*, 71 Or. 540 (143 Pac. 621); *Pacific Title & Trust Co.* v. *Sargent*, 73 Or. 485 (144 Pac. 452).

6. We remember that the ordinance was directed against those who operate or conduct a store, selling and dealing in general merchandise, groceries, clothing, boots and shoes, dry-goods, jewelry, meats and hardware. It omits all reference to other occupations, the regulation of which is authorized by the city charter, such as dealers in tinware, crockery, glassware, millinery, cigars and tobacco, fruit and confectionery, furniture stores, tailoring establishments, and book and stationery stores, as well as others not necessary to be mentioned. It is a constitutional right, common to all citizens, that:

''No law shall be passed granting to any citizen or class of citizens, privileges or immunities which, upon the same terms, shall not equally belong to all citizens'': Article I, Section 20, of the Oregon Constitution.

In our judgment the classification embraced in the ordinance is arbitrary and unfair, and no substantial distinction exists between those mentioned and those omitted, having in view the object to be attained by the charter, ''to secure the peace and good order of the

city and the health of its inhabitants.'' It is difficult
to conceive that any odor of sanctity hovers about a
furniture store or makes it so impeccable that it would
be exempt from the police power of the city, while a
hardware store should be subject to its scrutiny. The
same may be said in respect to almost any comparison
that might be made between the different occupations
mentioned in the legislation in question and in the city
charter. Practical justice demands that all who are
in the same category should be treated alike in the
exercise of authority for the good order of the com-
munity. It may be said that if we can compel stores,
with but few exceptions, to close on Sunday, as de-
clared in *State* v. *Nicholls,* 77 Or. 415 (151 Pac. 473),
supporting the state legislation upon that subject, the
City of Astoria could properly pass the ordinance in
question. The answer to this is that such measures
must be enforced against all alike which cannot be
said of the ordinance in question. In other words, the
grouping must include all who have substantially the
same relation to the end to be attained, namely, ''the
peace and good order of the city and the health of its
inhabitants.'' For illustration, it will be conceded by
all that a blacksmith-shop and a carpenter-shop bear
substantially the same relation to the peace, health and
good order of the community in which they are situ-
ated, and if any regulation of them is necessary to
affect the public welfare in general, both ought to be
treated alike, because, for that purpose, there is no
practical difference between them. On the other hand,
if the police power is to be exerted to prevent cruelty
to horses, it would be proper to include blacksmith-
shops in the classification, because such animals are
often shod there, and to exclude carpenter-shops for
the reason that horses are not generally found or

handled in such places.   Mere difference in name is
not in every instance a distinguishing characteristic
supporting the exercise of the police power against one
and not against the other.

The ordinance is radically at fault in its classifica-
tion, and for this reason, if for no other, the court was
wrong in sustaining the demurrer to the complaint.
It is not necessary to consider whether it would be a
reasonable manifestation of the police power to enact
such an ordinance and make it apply to all the trades
omitted from the measure here involved.

The decree is reversed and one entered here accord-
ing to the prayer of the complaint.

REVERSED.   DECREE RENDERED.