Submitted on briefs April 17, reversed and remanded May 22, 1957

ALUMINUM COOKING UTENSIL COMPANY ET AL
*v.* CITY OF NORTH BEND ET AL

311 P. 2d 464

Flaxel & Todd, North Bend, for appellants.

No appearance for respondents.

ROSSMAN, J.

This is an appeal by the plaintiffs from a judgment which the circuit court entered in favor of the defendants after it had sustained a demurrer to the complaint and the plaintiffs had declined to plead further. The complaint challenged the validity of a licensing ordinance of the defendant municipality.

The plaintiffs-appellants present a single assignment of error; it charges that the circuit court erred when it sustained the demurrer to the complaint.

■ Under the circumstances just mentioned, we must accept as true the allegations of the complaint. *Imbrie v. Hartrampf*, 100 Or 589, 198 P 521.

The plaintiffs are two in number. The complaint describes the plaintiff, The Aluminum Cooking Utensil Company, as a Delaware corporation whose principal place of business is in New Kensington, Pennsylvania. That concern, according to the complaint, manufactures cooking utensils in New Kensington and sells the manufactured wares throughout the United States, including the cities of Oregon, through distributors. The complaint particularly mentions the company's business in the city of North Bend. Continuing, the pleading says:

> "The plaintiff corporation conducts its business in the State of Oregon by and through distributors securing orders for future delivery of its wares."

Thus, the corporate plaintiff is both manufacturer and distributor.

We turn now to the part of the complaint which describes the other plaintiff, Irvin Fricke. It says that he is a resident of North Bend and is the company's

"distributor for Coos County, Oregon." According to the complaint, Fricke does not carry in stock any of the wares of the plaintiff corporation and confines his operations to the taking of orders for wares which he sends to the home office of the corporate plaintiff in New Kensington where the orders are filled and shipped directly to the customer. The complaint adds that Fricke, in keeping with the corporation's practices,

"carries on his business by negotiating sales for the plaintiff corporation's wares by calling upon prospective customers to display the plaintiff corporation's wares, all of which is done by first arranging appointments with such prospective customers and through the invitation of such prospective customers."

After the complaint has described as above the manner in which both plaintiffs conducted their business, particularly in the city of North Bend, it adds:

"The plaintiffs' business, especially in the City of North Bend, Coos County, Oregon, has become and is a valuable property right of the plaintiffs, the exercise of which results in profits to the plaintiffs."

Defendant Lyle Chappell is the Municipal Judge and Recorder of the defendant municipality, and defendant Leslie Liebman its Chief of Police.

Fricke, on April 18, 1956, was arrested in North Bend for a violation of the following ordinance of North Bend in that he had failed to procure the required license:

"AN ORDINANCE defining, regulating and licensing solicitors within the City of North Bend; providing penalty for the violation thereof; and repealing Ordinance No. 738 * * *.

* * *

"THE CITY OF NORTH BEND DOES ORDAIN AS FOLLOWS:

"Section 1. DEFINITION. A solicitor within the meaning of this Ordinance is defined to be any person who goes from house to house or place to place within the City of North Bend selling or taking orders for or offer to sell to take orders for goods, wares or merchandise for present or future delivery or for the making, manufacturing or repairing of any article or thing whatsoever for present or future delivery, excepting those selling to merchants for resale. The person, firm, or corporation so engaged shall not be relieved from complying with the provisions of this Ordinance merely by reason of associating temporarily with any local dealer, trader, merchant or auctioneer, or by conducting such transient business in connection with, as a part of, or in the name of any local dealer, trader, merchant or auctioneer. The word 'temporarily' as used herein shall mean any period of less than 4 weeks.

"Section 2. LICENSE. It shall be unlawful for any person to act as solicitor unless he first shall have secured a license therefor in the manner provided hereby.

"Section 3. FEES. The license fee for solicitors hereunder shall be $2.00 per calendar year and for any fraction thereof and shall be payable in advance for each solicitor as defined in Section 1.

"Section 4. APPLICATION. Any person, firm or corporation desiring to secure a solicitor's license shall apply in writing therefor to the City Recorder upon forms provided by the City. The form of said application and the requirements to be included therein shall be those which shall be prescribed by resolutions of the Council from time to time. All applications shall be accompanied by a fee of $5.00 to cover the cost of investigation of said applicant.

"Section 5. ISSUANCE OF LICENSE. Upon receiving an application the City Recorder shall make an investigation as to the character of the applicant and as to the enterprise in which he proposes to engage. He shall commence such investigation immediately and shall prosecute the same diligently and if satisfied as to the good moral character of the applicant and that said enterprise is a legitimate and honest one, he shall issue the license applied for. Each license shall expire upon the last day of each calendar year during which the same is given.

"Section 6. REVOCATION OF LICENSE. Licenses granted hereunder may be revoked by the City Recorder for the following causes:

1. Upon the discovery that any of the statements or representations made in the application are untrue.

2. Upon discovery of additional facts which, had they been known at the time of granting the license would have been sufficient cause to refuse the granting of such license.

3. Misrepresentation of products sold or fraud committed in the selling thereof.

4. Violation of any Ordinance of the City of North Bend or of any State or Federal law.

"Section 7. EXCEPTION. This Ordinance shall not apply to the peddlers of or to the taking of orders for the sale of any farm or truck garden products raised by the peddler or his immediate family.

\* \* \*

"Section 12. PENALTY. Any person, firm or corporation violating the terms of this Ordinance shall, upon conflict thereof be fined not to exceed $200.00 or imprisoned in the city jail not to exceed sixty days or by both such fine and imprisonment."

Following Fricke's arrest he obtained his release by posting $50 bail.

The complaint alleges that the charge against Fricke has not yet come to trial, but that the city will prosecute unless restrained by court order; and that the defendants advised the plaintiffs that in the event Fricke is convicted, his fine will be less than $20 so that he cannot appeal the conviction to the circuit court.

The complaint, referring to the actions which the defendants have taken for the enforcement of the ordinance, alleges:

"* * * such proceedings on the part of the defendants will result in irreparable loss and damage to the plaintiffs in the distribution of their wares in the City of North Bend."

The complaint also alleges that the plaintiffs have no plain, speedy or adequate remedy at law.

It will be noticed that only Fricke has been arrested. However, both he and his employer pray for a decree that the ordinance is invalid.

The ordinance is characterized by the complaint as violative of Section 8 of Article I of the Federal Constitution and of Section 20 of Article I, Constitution of Oregon.

Fricke and his employer sought by their prayer (1) a preliminary injunction restraining the defendants "from prosecuting said case against plaintiff Irvin Fricke" pending the final hearing of this case; and (2) a permanent injunction at the conclusion of the case enjoining the enforcement of the ordinance on the ground that it is invalid.

■ The first problem is: will a court of equity entertain a suit for a decree holding invalid an ordinance which exacts a license and prescribes a penalty for those who refuse to obtain one. Ordinarily, equity declines to enjoin criminal prosecutions, leaving the accused to

establish within the criminal prosecution his defenses. Although it is claimed that the city's case against Fricke, which is pending in the municipal court of North Bend, is criminal, yet Mr. Justice BRAND, in *City of Portland v. Goodwin,* 187 Or 409, 210 P2d 577, said:

> "At the threshold of discussion we point out that violation of a municipal ordinance is not a crime."

He added:

> "It is at most a public tort, quasi criminal in character."

The ordinance before the court in that case provided a maximum penalty of six months' imprisonment and a fine of $500 for those convicted of roaming the city streets "after hours."

Notwithstanding the fact that the reasons traditionally given for equity's reluctance to enjoin criminal prosecutions (see notes 37 Calif L Rev 685, and 25 Mich L Rev 892) appear to have scant application to a case brought under a licensing ordinance, we will deem the proceeding pending in the municipal court of North Bend, and which accuses Fricke of a violation of the above-quoted ordinance, as criminal in character.

It is well settled in this state that if the enforcement of an ordinance, invalid because of its conflict with constitutional provisions, will adversely affect the property rights of the accused, enforcement may be enjoined by a court of equity. This court, in *Sandys v. Williams,* 46 Or 327, 80 P 642, said:

> "* * * Where criminal prosecutions under color of a void law are threatened, which act, if enforced, would deprive a party of a property right, a preliminary injunction may properly be issued to prevent the menaced injury: * * *."

The statement was repeated in *Hall v. Dunn,* 52 Or 475, 97 P 811. In *Portland Fish Co. v. Benson,* 56 Or 147, 108 P 122, the court enlarged the rule into this principle:

> "* * * But the enforcement of a void law or a proceeding *ultra vires,* whether it is attempted to be enforced by a criminal prosecution or otherwise, which, if enforced, would deprive a party of a property right, may be enjoined."

*Sherod v. Aitchison,* 71 Or 446, 142 P 351, declares:

> "One of the exceptions to this general rule is where an attempted enforcement of an invalid ordinance or statute would result in irreparable injury to property rights, in which case a court of equity may restrain the maintenance of criminal actions: * * *."

The language just quoted is followed by citations to several decisions of other jurisdictions and then by this statement:

> "This departure from the ordinary precept has been recognized and followed in Oregon: * * *."

At that point four Oregon citations are given. The opinion went on to make the following observation:

> "Under the decisions of this court, to entitle a party to invoke equitable intervention to restrain the enforcement of an alleged void penal statute, on the ground that it would injuriously affect his property rights, he must allege in his complaint that the business in which he is engaged is clearly interdicted by the provisions of the enactment, or he may aver that, * * *."

It will be observed that the complaint in the suit at bar sets forth all of the required averments and added such other matters as "irreparable loss and damage in the distribution of their wares."

■ In the application of the above rule, this court has not demanded that the property right must be impressive in nature or value. *Winslow v. Fleischner,* 110 Or 554, 223 P 922, held that the privilege of hunting wild animals or fowl, fit for food, was a property right of sufficient importance to enable the plaintiff in that case [an attorney] to challenge successfully one of our game laws. See, also, *Fields v. Wilson,* 186 Or 491, 207 P2d 153. The Winslow decision says:

> "Whether or not an injury is irreparable depends not upon the magnitude of the injury, but upon the completeness of a remedy in law."

In that case the complaint averred that the defendants "threaten to and will, unless restrained, * * * prosecute any and all persons who hunt for or take said deer * * *." Among the defendants were the district attorneys of the judicial districts in which the plaintiff proposed to hunt.

This court has twice employed, in instances similar to Fricke's, the principle of equity jurisprudence which is stated in the passages which we took from the Sandys, Hall, Sherod and Portland Fish Company decisions and which was employed in the Winslow case. We shall mention them briefly.

*Spaulding v. McNary,* 64 Or 491, 130 P 391, 130 P 1128, was a suit by an Iowa partnership, engaged in the manufacture of vehicles, to enjoin the maintenance of criminal proceedings against their agents in this state for violation of the Oregon statute which exacts of peddlers a license. The plaintiffs contended that since their agents had no authority to make sales, and went no further than to take orders, the Oregon statute was inapplicable. The complaint alleged that as a result of the defendants' efforts to enforce the statute, the

plaintiffs suffered irreparable loss and damage for which they had no adequate remedy at law. The circuit court sustained a demurrer to the complaint. In reversing, this court said:

"The rule is well established that if the threatened enforcement by prosecuting officers of a void statute will affect the property rights of a party, injunction will lie to prevent the menace from being carried into effect; * * *."

*Ideal Tea Co. v. Salem,* 77 Or 182, 150 P 852, was a suit against the city of Salem and some of its officers to enjoin the enforcement of a municipal ordinance upon the subject of peddling. The plaintiffs were the Ideal Tea Company, whose main office was in Portland, and one Henshaw, who was its Salem representative. Henshaw, like Fricke, made no sales and merely took orders. Immediately before the case under review was filed, the city had arrested Henshaw upon a charge that he had violated the ordinance above mentioned, and instituted a prosecution against him in the recorder's court. He was compelled to post bail. The complaint in the case under review alleged that the city officers threatened to prosecute Henshaw "and the plaintiffs have been prevented from pursuing their business in Salem, to their damage in the sum of $500." The charge was made that the ordinance was violative of Section 20 of Article I, Constitution of Oregon. A demurrer to the complaint was overruled and the defendants appealed. In affirming, this court said:

"When, under color of void legislation relating to misdemeanors, the prosecution of an alleged offender is threatened, which attempted enactment if enforced would deprive a party of a valuable property right, a court of equity, upon proper application, will intervene, and by injunction prevent the menaced injury: * * *."

In that case, as in the instant one, both employer and solicitor were the parties plaintiff. Likewise, in the two cases dependence was placed upon Section 20 of Article I, Constitution of Oregon.

*Purple Truck Garage Co., et al. v. Thomas K. Campbell et al.*, 119 Or 484, 250 P 213, was a suit by motor truck carriers, highway contractors and a dealer in building materials to challenge the validity of an act which authorized the Public Service Commission to supervise and regulate motor carriers. The complaint alleged that "the defendants have caused the arrest and prosecution of the drivers engaged by the plaintiffs in the operation of their trucks and will continue so to do unless enjoined." In sustaining the decree of the circuit court in favor of the plaintiffs, the decision quoted from *Spaulding v. McNary,* supra, as follows:

> "* * * if the threatened enforcement by prosecuting officers of a void statute will affect the property rights of a party, injunction will lie to prevent the menace from being carried into effect; * * *."

*Pierce v. Society of Sisters,* 268 US 510, 45 S Ct 571, 69 L Ed 1070, 39 ALR 468, held invalid the Oregon Compulsory Education Act, criminal in nature, even though the act was not scheduled to become effective until two years hence. Other cases which employed the rule under consideration are *Kroner v. City of Portland,* 116 Or 141, 240 P 536, and *Cham Sing v. Astoria,* 79 Or 411, 155 P 378.

It is clear that this court is committed to the rule that if the threatened enforcement of a void ordinance will affect the property rights of a party, injunction will lie to prevent the threatened menace from occurring.

The question now occurs as to whether the plaintiffs alleged sufficient to show that property rights which they possess are affected by the defendants' attempts to enforce the challenged ordinance.

The averments of the complaint are admitted by the demurrer and it thereby appears that plaintiffs Fricke and the Aluminum Cooking Utensil Company have established a business in North Bend and that it "results in profits to the plaintiffs." It may be that a merchant on Fifth Avenue in New York would view with disdain the business which Fricke calls his own, but Fricke's business provides him with a profit and enables him to deem himself his own boss. Likewise, it is apparent that the corporation has won for itself valuable patronage in North Bend. As we have seen, equity, in instances of this kind, does not make its jurisdiction depend upon the volume of the business that is done. In the contemplation of the law, the humble business possessed by a Fuller Brush salesman is as much entitled to the protecting arm of a court of equity as the impressive establishments found in a metropolis. That is as it should be.

■ According to a note in 37 Calif L Rev 685, "it is settled that the right to carry on a business is such a right." *Ideal Tea Co. v. Salem,* supra, deemed that the trade which Henshaw had established for himself in Salem was a business and that it was entitled to equity's protection. The decision viewed in the same manner the business which the Ideal Tea Company had acquired for itself in Salem. For example, the decision said:

> "The ordinance * * * should not be classed as an exercise of the police power, since it would seem that such business could not injuriously disturb the peace, molest the order, * * *.

"In the case at bar, the business in which the plaintiffs are engaged is identical with that of some of the merchants of Salem whose employees daily visit the houses of their customers, taking orders for groceries which are later delivered,  *  *  *.''

Thus, one can have a business even though he has no storeroom. It will be observed that the situation of the two plaintiffs who are at bar is no different from the plaintiffs in the Ideal Tea Company case. *Pierce v. Society of Sisters,* supra, is another instance in which the interest protected was a business, or possibly we should call it a patronage. In that case, the structures occupied by the private schools at the time the suit was filed would have remained even if the injunction had been denied; but a denial of the injunction would have cost the schools their business. Therefore, the business, that is, the patronage of the schools, was the object of concern. Other good illustrations are *Bueneman v. City of Santa Barbara,* 8 Cal2d 405, 65 P2d 884; *Jones v. City of Los Angeles,* 211 Cal 304, 295 P 14; *San Diego T. Assn. v. East San Diego,* 186 Cal 252, 200 P 393. We are satisfied that the business which the plaintiffs have established in North Bend is entitled to the protection of a court of equity.

It is reasonable to believe that the enforcement of the challenged ordinance will have a detrimental, if not fatal, effect upon Fricke's business. Although the penal sanction of the ordinance practically leaves the company unaffected, enforcement will curtail its power to earn profits, for if Fricke and similar salesmen cannot call upon the trade, the company cannot sell its products locally.

■ If the plaintiffs have to work out their destiny through the case which is pending in the North Bend municipal court, their business is in grave jeopardy

and very likely will be lost. Municipal courts, for reasons which are obvious, are reluctant to declare laws unconstitutional. They are poorly equipped to resolve issues such as the one upon which the plaintiffs depend. In many instances, the municipal judge is not even a member of the bar. In the present instance, according to admitted averments of the complaint, the plaintiffs have been advised by the defendants that if Fricke is found guilty he will be fined in a sum less than $20 so as to prevent an appeal. If this court should hold that the plaintiffs must litigate the issue of constitutionality in the municipal court of North Bend, we will relegate them to a court poorly equipped to resolve the controlling issue, and by the time it is decided the plaintiffs will have lost their business.

The above analysis satisfies us that the plaintiffs' property rights are in jeopardy and that a court of equity should entertain this suit.

■ The plan of the North Bend ordinance seems to be to regulate, via privilege tax, the activities of itinerant solicitors. Transience appears to characterize the activities of the persons described in Section 1. Such a person is relieved of the obligation to pay the tax by "associating" with a local dealer or merchant for a period exceeding four weeks. So broad are the connotations of the noun "dealer" that one might inquire whether Fricke himself, being a North Bend resident, is not a local dealer. Yet the definition of "solicitor" contained in Section 1 of the ordinance is unambiguous. Fricke is there described. The unlicensed activity in which he has engaged is proscribed by the ordinance.

Section 20 of Article I of the Constitution of the State of Oregon provides:

"No law shall be passed granting to any citizen or class of citizens, privileges or immunities which,

upon the same terms, shall not equally belong to all citizens.''

The ordinance provides in Section 1 that no solicitor shall be relieved from complying with the provisions of the ordinance merely by temporary association with a local dealer, trader, merchant or auctioneer; a temporary association being one of less than four weeks' duration. Although the ordinance does not expressly so provide, the language just paraphrased is futile unless a solicitor who effects a nontemporary association with a local merchant, etc., is excused from compliance. Thus, the transient solicitor who forms no nontemporary association with a local merchant, and the resident solicitor who likewise fails to enter into such an association are required to pay the tax, while their colleagues who associate for four weeks or more are not. The distinction is not based upon residence versus itinerance, nor permanence versus transience, but upon association versus independence.

In *Ideal Tea Co. v. Salem,* supra, the City of Salem required a substantial license fee from house to house solicitors, except those having a regular place of business in Salem. The Tea Company's main offices were in Portland. Its solicitor had resided in Salem for quite some time prior to his arrest for selling without a license, but maintained no place of business there. This court affirmed the order of the circuit court which overruled a demurrer to the complaint praying that enforcement of the ordinance be enjoined. The decision states:

"In the case at bar, the business in which the plaintiffs are engaged is identical with that of some of the merchants of Salem whose employees daily visit the houses of their customers, taking orders for groceries which are later delivered, except that

> the plaintiffs do not have a regular place of business in that city. * * * the ordinance in question is a clear violation of Section 20 of Article I, of the Constitution of the state, and for that reason is void."

The same concept is expressed by Mr. Justice BEAN in *State v. Wright,* 53 Or 344, 348, 100 P 296, 21 LRS(NS) 349:

> "A statute which * * * imposes special burdens upon persons engaged in substantially the same business, under the same conditions, cannot be sound, because it is class legislation, and an infringement of the equal rights guaranteed to all."

The basis of classification declared in the North Bend ordinance is less substantial than that which was required by Salem in the Ideal Tea case. We conclude that Article I, section 20, of our Constitution prohibits a municipality from imposing a license requirement upon non-associated solicitors, while excusing associated solicitors from bearing that burden.

Our conclusion that the North Bend ordinance must fall before the Oregon constitutional command obviates any discussion of a possible conflict between its operation in this case and the commerce clause of the Constitution of the United States, or any consideration of the applicability in that regard of the rule announced in *Spaulding v. McNary,* supra.

The judgment below is reversed and the case is remanded in order that the circuit court may proceed in a manner not inconsistent with this opinion.

Reversed and remanded.